[No. H020212. Sixth Dist. Mar. 15, 2000.]

In re KENNY A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
KENNY A., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part A.

**COUNSEL**

David Linn, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Rene A. Chacon and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELIA, J.**—Following a contested jurisdictional hearing, the juvenile court sustained a Welfare and Institutions Code section 602 petition alleging that appellant violated Health and Safety Code section 11359, possession of marijuana for sale. Appellant was a minor at the time of the offense and 18 years of age at the time of disposition. The court placed appellant on juvenile probation with certain terms and conditions. The court committed appellant to the county jail for 180 days, with 30 days stayed. He was deemed not eligible for any out of custody programs, work furlough, time credits or weekend work. Appellant contends he received ineffective assistance of counsel and that the juvenile court erred in sentencing him to county jail. In the unpublished portion of this opinion, we reject appellant's ineffective assistance claim. In the published portion of this opinion, we agree there was error in the disposition.

In March 1999, appellant was attending Fremont High School in Sunnyvale. The assistant principal, Lawrence Vilaubi, detained appellant and searched his backpack. In it Vilaubi found a cloth glove. The glove contained five 1-inch-square baggies that appeared to contain marijuana. Appellant also had a $20 dollar bill and a $5 bill.

Sunnyvale Police Officer Dean Discler came to the school and questioned appellant. He read appellant his *Miranda* rights and asked appellant if he understood the rights. Appellant indicated that he did. Appellant admitted the marijuana was his but denied that he intended to sell it. Later, appellant told Discler "Okay, fine. I'm selling it. Is that what you want to hear?"

Qualifying for the first time as an expert in possession of marijuana for sale, Officer Discler testified that, based on the packaging and appellant's possession of a $20 bill, he formed the opinion that the marijuana was possessed for sale.

Appellant testified that he possessed the marijuana for personal use. He denied telling Officer Discler that he intended to sell the marijuana. He said when he told Officer Discler he possessed the marijuana for personal use only, Officer Discler appeared quite angry and then said that was "bullshit" and called him a "little fuckin' liar" and a "little asshole."

## A. *Ineffective Assistance Claim**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## B. *Disposition Claim*

■ Appellant challenges the disposition in this matter. The probation report states "[s]ince the subject is now 18 years old, he cannot utilize many of the Juvenile Probation Department's services such as the Juvenile Rehabilitation Facility. He is not a good candidate for the Electronic Monitoring Program, since the allegation of the Petition is for sales of marijuana. A state level commitment is not warranted at this time as the minor has no history of violence. Therefore, the only other option is to recommend that the subject become a Ward of the Court and for the subject to serve 180 days in County Jail."[2]

At the conclusion of the hearing, the court addressed Mr. Vilaubi, the school official, and told him "I think you can get the message back to kids at the school that this is serious business. And if they're under 18 but close to 18 or even 18 at the time of disposition in juvenile court they're going to spend time in the county jail."

The court said, "The petition is true as found by the court. The minor or this subject comes within the provisions of section 602. He's made a ward of the court. His welfare requires his physical custody be taken from the parent and return would be detrimental at this time. He's committed to juvenile hall for 180 days. No time reduction, no early release, 30 days are stayed because there will be probation orders and that's one of the issues of probation. He's to be admitted to and detained in the juvenile hall today. Do the parents wish to drive him directly after court?" When appellant's father answered yes, the court continued "You're going to take him down to the juvenile hall. Mr.

---

*See footnote, *ante*, page 1.

[2]The form prepared by the clerk in this matter would lead one to believe that commitment to county jail from juvenile court is fairly routine these days. Following the portion of the form in which a box is checked adjudging the subject of the petition a ward of the juvenile court, there are five headings representing dispositional alternatives. Three of them concern placement at the California Youth Authority, the "ranch" or juvenile rehabilitation facility, and other placements such as a private institutional placement. A fourth heading is labeled "Juvenile Hall/County Jail commitment," and includes this line: "The minor is committed to __ days in Juvenile Hall and to be housed in COUNTY JAIL on 18th birthday ___." The fifth heading is labeled "County Jail Commitment" and contains the line checked in this case: "The minor/subject is committed to Juvenile Hall for 180 days to be housed in COUNTY JAIL/ to obey all rules and regulations of facility." The form provides the option of checking whether the ward is subject to any out-of-custody programs, time reduction, good time or work time credits, work furlough and weekend work program. The boxes checked indicate the court found appellant ineligible for all of these.

Voorhes will explain that to you and the subject will then be committed to the county jail, and remanded to the custody of the Department of Corrections. No good time, no work time credits. He's to obey all rules and regulations of the jail." The court then imposed further probation conditions on appellant.

Appellant argues "the juvenile court failed to make [the] required findings that [appellant] should be removed from the physical custody of his parents before committing him to county jail." *In re Kenneth H.* (1983) 33 Cal.3d 616 [189 Cal.Rptr. 867, 659 P.2d 1156], held that Welfare and Institutions Code section 726 requires a finding only in the language of the statute and that additional express findings are not required.

Appellant contends the "juvenile court lacked the authority to commit [appellant] directly to jail." We agree. Welfare and Institutions Code section 202, subdivision (b) provides in part: "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter."

Subdivision (e) of Welfare and Institutions Code section 202 explains that "punishment" means the imposition of sanctions which may include the following: "(1) Payment of a fine by the minor. [¶] (2) Rendering of compulsory service without compensation performed for the benefit of the community by the minor. [¶] (3) Limitations on the minor's liberty imposed as a condition of probation or parole. [¶] (4) *Commitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch.* [¶] (5) *Commitment of the minor to the Department of the Youth Authority.* [¶] 'Punishment,' for the purposes of this chapter, does not include retribution." (Italics added.)

Commitment to the county jail is not included in the various specified options. Respondent argues that, because appellant was 18 at the time of disposition, Welfare and Institutions Code section 208.5 supplies authority for this commitment. Welfare and Institutions Code section 208.5 provides: "Notwithstanding any other provision of law, in any case in which a minor who is detained in or committed to a county institution established for the purpose of housing juveniles attains the age of 18 prior to or during the period of detention or confinement he or she may be allowed to come or

remain in contact with those juveniles until the age of 19, at which time he or she, upon the recommendation of the probation officer, shall be delivered to the custody of the sheriff for the remainder of the time he or she remains in custody, unless the juvenile court orders continued detention in a juvenile facility. The person shall be advised of his or her ability to petition the court for continued detention in a juvenile facility at the time of his or her attainment of the age of 19. Notwithstanding any other provision of law, the sheriff may allow such a person to come into and remain in contact with other adults in the county jail or in any other county correctional facility in which he or she is housed."[3]

Welfare and Institutions Code section 208.5 does permit housing a ward in county jail under certain circumstances, but it does not allow the juvenile court to commit an 18-year-old to county jail as part of its disposition order. Instead, the statute permits an 18-year-old ward to remain in a county institution for juveniles until age 19. The statute permits even a 19-year-old ward to remain in a juvenile facility if the court so orders. Nothing in its language excuses the unauthorized disposition that was ordered in this case.

Welfare and Institutions Code section 208.5 is one in a series of statutes controlling the custodial segregation of adults and juveniles. Section 207.1 provides in part: "No court, judge, referee, peace officer, or employee of a detention facility shall knowingly detain any minor in a jail or lockup, except as provided in subdivision (b) or (d)." The exceptions include a juvenile found unfit for juvenile court or a juvenile who is a serious security risk.[4] Both exceptions specifically refer to the limits imposed by section 208. Section 208 prohibits contact between "any person under 18 years of age"

---

[3]A jail, as defined in Welfare and Institutions Code section 207.1, subdivision (i)(1), is a "locked facility administered by a law enforcement or governmental agency, the purpose of which is to detain adults who have been charged with violations of criminal law and are pending trial, or to hold convicted adult criminal offenders sentenced for less than one year."

[4]Welfare and Institutions Code section 207.1 provides in part: "(a) No court, judge, referee, peace officer, or employee of a detention facility shall knowingly detain any minor in a jail or lockup, except as provided in subdivision (b) or (d). [¶] (b) Any minor who is alleged to have committed an offense described in subdivision (b), paragraph (2) of subdivision (d), or subdivision (e) of Section 707 whose case is transferred to a court of criminal jurisdiction pursuant to Section 707.1 after a finding is made that he or she is not a fit and proper subject to be dealt with under the juvenile court law, or any minor who has been charged directly in or transferred to a court of criminal jurisdiction pursuant to Section 707.01, may be detained in a jail or other secure facility for the confinement of adults if all of the following conditions are met: [¶] (1) The juvenile court or the court of criminal jurisdiction makes a finding that the minor's further detention in the juvenile hall would endanger the safety of the public or would be detrimental to the other minors in the juvenile hall. [¶] (2) Contact between the minor and adults in the facility is restricted in accordance with Section 208. [¶] (3) The minor is adequately supervised. [¶] (c) A minor who is either found not to be a fit and proper subject to be dealt with under the juvenile court law or who will be transferred to a court of criminal

and any confined adults. It also prohibits contact between a "ward or dependent child of the juvenile court" committed to any state hospital or other state facility and any "adult person" committed to such a facility as a specified type of sex offender. (*Ibid.*) The statutes in this series, including section 208.5, are designed to regulate housing. None can reasonably be read as intended to expand the authority of the juvenile court beyond the dispositional alternatives specified in section 202, subdivision (e).

*In re Kirk G.* (1977) 67 Cal.App.3d 538, 539-540 [136 Cal.Rptr. 706], relying on *In re Maria A.* (1975) 52 Cal.App.3d 901, 903-904 [125 Cal.Rptr. 382], holds the juvenile court may not place a ward in an adult facility such as a county jail. The *Kirk G.* court observed, "The Juvenile Court Law carefully sets forth this kind of dispositional order that a juvenile court can make." (67 Cal.App.3d at p. 540.) The choice of places to which the court can commit a ward is essentially a legislative rather than a judicial prerogative. The court's authority to make "any and all reasonable orders for the . . . custody" of a ward is confined to the custodial dispositions provided for

---

jurisdiction pursuant to Section 707.01, at the time of transfer to a court of criminal jurisdiction or at the conclusion of the fitness hearing, as the case may be, shall be entitled to be released on bail or on his or her own recognizance upon the same circumstances, terms, and conditions as an adult who is alleged to have committed the same offense. [¶] (d)(1) A minor 14 years of age or older who is taken into temporary custody by a peace officer on the basis of being a person described by Section 602, and who, in the reasonable belief of the peace officer, presents a serious security risk of harm to self or others, may be securely detained in a law enforcement facility that contains a lockup for adults, if all of the following conditions are met: [¶] (A) The minor is held in temporary custody for the purpose of investigating the case, facilitating release of the minor to a parent or guardian, or arranging transfer of the minor to an appropriate juvenile facility. [¶] (B) The minor is detained in the law enforcement facility for a period that does not exceed six hours except as provided in subdivision (f). [¶] (C) The minor is informed at the time he or she is securely detained of the purpose of the secure detention, of the length of time the secure detention is expected to last, and of the maximum six-hour period the secure detention is authorized to last. In the event an extension is granted pursuant to subdivision (f), the minor shall be informed of the length of time the extension is expected to last. [¶] (D) Contact between the minor and adults confined in the facility is restricted in accordance with Section 208. [¶] (E) The minor is adequately supervised. [¶] (F) A log or other written record is maintained by the law enforcement agency showing the offense that is the basis for the secure detention of the minor in the facility, the reasons and circumstances forming the basis for the decision to place the minor in secure detention, and the length of time the minor was securely detained. [¶] (2) Any other minor, other than a minor to which paragraph (1) applies, who is taken into temporary custody by a peace officer on the basis that the minor is a person described by Section 602 may be taken to a law enforcement facility that contains a lockup for adults and may be held in temporary custody in the facility for the purposes of investigating the case, facilitating the release of the minor to a parent or guardian, or arranging for the transfer of the minor to an appropriate juvenile facility. While in the law enforcement facility, the minor may not be securely detained and shall be supervised in a manner so as to ensure that there will be no contact with adults in custody in the facility. If the minor is held in temporary, nonsecure custody within the facility, the peace officer shall exercise one of the dispositional options authorized by Sections 626 and 626.5 without unnecessary delay and, in every case, within six hours."

in other sections of the Welfare and Institutions Code, particularly section 202.

Respondent argues that "appellant was properly committed to county jail . . . because the court did not sentence him directly to county jail." The court's comments at the time of disposition clearly indicate it intended the disposition to be, for all practical purposes, a county jail commitment. The court did say that appellant was committed to juvenile hall, and was to report there to then serve his time in county jail. To accept this procedural subterfuge as proper would be to condone an unauthorized disposition by the juvenile court. We decline to do so.

Appellant contends that if his commitment to county jail is proper, he is entitled to earn good time/work time credits under Penal Code section 4019. He acknowledges that Welfare and Institutions Code section 726 expressly provides that a minor is not entitled to earn credits under Penal Code sections 2930 through 2932. He argues that by expressly prohibiting minors from earning conduct credits under sections 2930 through 2932, the Legislature implicitly permitted minors to earn such credits under other provisions, such as section 4019. He further contends that when a juvenile is given an adult disposition, equal protection mandates that he be able to earn credits the same as an adult.

Appellant argues "[e]ven though appellant is likely to complete his jail term before this appeal is decided, the issue is not moot, since he can be given 4019 conduct credits retroactively for the time actually served, to be credited for purposes of his ongoing felony juvenile probation." Under section 4019, an individual who is serving a county jail sentence "as a condition of probation after suspension of imposition of a sentence or suspension of execution of sentence, in a criminal action or proceeding," is entitled to conduct credits. *In re Ricky H.* (1981) 30 Cal.3d 176, 189, 190 [178 Cal.Rptr. 324, 636 P.2d 13], recognized that different treatment is permitted for juveniles and adults because juvenile placements are for treatment and rehabilitation whereas adult commitments are usually for punishment. Because of this different purpose, equal protection may not be violated by denying wards of the juvenile court conduct credits that may be earned by adults. It is well established that an equal protection violation exists only where similarly situated parties are treated disparately. (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) Because appellant does not fit any of the definitions of those entitled to conduct credits pursuant to Penal Code section 4019, subdivision (a)(1)-(4), he is not similarly situated to any group entitled to credits under that section.

The matter is remanded for a new dispositional order.

Cottle, P. J., and Premo, J., concurred.