114 Cal.Rptr.2d 214 (2001)
94 Cal.App.4th 308
In re VICTOR F., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Victor F., Defendant and Appellant.
No. A094073.
Court of Appeal, First District, Division Two.
December 7, 2001.
Review Granted March 20, 2002.
Matthew Zwerling, Executive Director, L. Richard Braucher, Staff Attorney, Under appointment by the Court of Appeal for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Christina V. Kuo, Deputy Attorney General, William Kuimelis, *215 Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
LAMBDEN, J.
Following a contested jurisdictional hearing, the juvenile court sustained a Welfare and Institutions Code section 602 petition alleging possession of a knife on school grounds and destroying or concealing evidence (Pen.Code, §§ 626.10, subd. (a); 135).[1] The court continued the dispositional hearing for three weeks and ordered that appellant be screened by the Immigration and Naturalization Service (INS) for deportation. At the continued dispositional hearing, the court was notified that appellant had been deported to Mexico. The court found the matter of disposition moot and issued a bench warrant for appellant's arrest, which is to remain outstanding until he reaches the age of majority.
On appeal appellant contends: (1) The evidence was insufficient to support the finding that he violated Penal Code section 135; and (2) the order directing that he be screened by INS for deportation was unauthorized under juvenile court law. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On October 31, 2000, security guard Todd Smith saw 30-50 students gathered next to a classroom at Armijo High School in Fairfield. Believing there was a fight, he ran over to stop it. When Smith approached, the crowd parted, and he saw appellant and Carlos R. facing each other. Carlos stepped back as if to avoid something. Smith talked to Carlos first, attempting to calm him down. By the time Smith had handcuffed Carlos, appellant was gone.
Smith found appellant standing near Andre C. and another boy. Smith began to speak to appellant, who told him he did not speak English. Smith saw Andre shuffling around and then heard something drop on the ground. Smith saw a folded pocket knife on the ground near Andre. Appellant became upset and punched a pole.
Carlos testified that he was walking with his cousin to math class when he stopped to watch a fight. Carlos saw appellant look at him "wrong." Carlos made faces at him, and he and appellant approached each other. Appellant swung a knife at Carlos, who jumped back.
Andre testified that he took appellant's knife and gave it to a friend shortly before Todd Smith approached. The knife fell to the ground after he had passed it to his friend.
Appellant testified that he was with his friend who was going to fight someone when Carlos passed by and began to stare at him and say things. When Carlos and his cousin approached appellant, appellant thought they were going to beat him up, so he pulled out a knife to scare them. Appellant gave the knife to Andre because he was afraid it would be found on him.

ARGUMENT

Sufficiency of Evidence[**]

INS Screening
Appellant came to the United States illegally from Tijuana, Mexico, with his stepfather to learn English. Appellant's mother lives in Tijuana, Mexico. Appellant, who was 15 at the time of the probation report, had been in the United States *216 about a year and was living with his aunt and uncle. Other than the offenses in the current petition, appellant had no criminal record or disciplinary referrals at school. Appellant was "repentant" for his conduct, and his teachers spoke highly of him and expressed surprise at his involvement in this offense that resulted in his expulsion from school.
The probation officer's dispositional report recommended that appellant be committed to Fouts Springs Boys Ranch prior to INS screening for deportation. Trial counsel argued for probation so that appellant could attend school. The court expressed doubt that appellant would be permitted to attend any school after having been expelled for possession of a knife. The court also expressed its belief that "Fouts Springs is a little heavy for the offense," noting, "I don't think it's anywhere near as serious as portrayed in the probation report."
When the question of deportation arose, the court heard from Probation Officer Calderon who explained: "Your honor, there are essentially two ways that deportation can occur. One would be immediately if that were the Court's decision. In that case, I would contact Larry Nelson fromSolano County Agent for INS. He would screen the minor for deportation which is essentially just a process of determining whether the minor is here in the country legally or illegally. [¶] By the minor's own admission, he's in the country illegally. At that point, a detainer would be placed by INS. They would search for his space in a juvenile detention facility somewhere in California. As soon as such space was procured, the minor would be transferred from our juvenile hall by INS to that, to that facility where he would then begin a series of up to three detention hearings which would ultimately end in deportation usually within three weeks. [¶] He would then be taken by INS, transported to Tijuana and released there where his family lives. [¶] Or, should it be the Court's decision to first commit the minor to the Fouts Springs Boys Ranch, the Fouts Springs probation officer Matt Glasgow would in fact at the last month of the minor's program at Fouts get in touch with INS, explain the minor's status, and that process would then begin as I described it at the other end of the minor's Fouts Springs' stay."
Probation Officer Calderon recommend a Fouts commitment before deportation to teach appellant "some consequences."
The court stated, "My thinking, if he going to be deported, why, it would seem to be, now would be the time to do it rather than sendingkeeping him here at the county expense or the state expense, and then as soon as he's done his time, to send him back down to Mexico.... [¶][I]f deportation is a sure thing, I would just as soon let him go back with his parents which I think is where he belongs anyhow."
Trial counsel objected to any referral to the INS for deportation, asking instead that appellant be allowed to return to Mexico voluntarily to prevent "a deportation order from affecting any future citizenship possibilities." The prosecutor objected to permitting appellant to return voluntarily with his parents and recommended INS screening for deportation.
The court continued the dispositional hearing for three weeks and ordered INS screening. At the continued hearing the court was informed that appellant had been deported to Mexico. The court observed that appellant's deportation made the dispositional issue moot and issued a bench warrant to remain in effect until appellant reaches the age of majority.
*217 Appellant urges us to decide the issue of the court's authority to order INS deportation screening even though appellant's deportation may have made it technically moot because the issue concerns an important recurring problem which may evade review. It is well-settled that a court may render an opinion when an issue is technically moot if "it presents an important question affecting the public interest that is `"`capable of repetition, yet evading review.'"'" (NBC Subsidiary (KNBC-TV), Inc. v. Superior Court (1999) 20 Cal.4th 1178, 1190, fn. 6, 86 Cal.Rptr.2d 778, 980 P.2d 337, quoting Press-Enterprise Co. v. Superior Court (1986) 478 U.S. 1, 6, 106 S.Ct. 2735, 92 L.Ed.2d 1.) We agree that this is such a case. Appellant was deported within three weeks after the juvenile court ordered INS screening. The issue is clearly capable of repetition, yet evading review.
Appellant contends the order referring him for deportation screening by INS is not a dispositional option available to the juvenile court under California law. Under Juvenile Court Law (§§ 200-987), a minor who violates a state or local ordinance may be adjudged a ward of the juvenile court. (§ 602.) Section 202, subdivision (b) provides: "... Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter...."
Subdivision (e) of section 202 provides that "`punishment' means the imposition of sanctions.... Permissible sanctions may include the following: [¶] (1) Payment of a fine by the minor. [¶] (2) Rendering of compulsory service without compensation performed for the benefit of the community by the minor. [¶] (3) Limitations on the minor's liberty imposed as a condition of probation or parole. [¶] (4) Commitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch, [¶] (5) Commitment of the minor to the Department of the Youth Authority. `Punishment,' for the purposes of this chapter, does not include retribution."
Relying on In re Kenny A. (2000) 79 Cal.App.4th 1, 93 Cal.Rptr.2d 678 and In re Kirk G. (1977) 67 Cal.App.3d 538, 136 Cal.Rptr. 706, appellant argues that the court's order was unauthorized because it was not among the dispositions provided in section 202, subdivision (e). In both of those cases, the juvenile court committed a minor to county jail as a condition of probation. Kenny A and Kirk G. held that such an order was unauthorized because it was not among the dispositions provided for in the Welfare and Institutions Code. County jail is not included in section 202's listing of dispositions. As the court in Kenny A. explained: "The choice of places to which the court can commit a ward is essentially a legislative rather than a judicial prerogative. The court's authority to make `any and all reasonable orders for the ... custody' of a ward is confined to the custodial dispositions provided for in other sections of the Welfare and Institutions Code, particularly section 202." (In re Kenny A, supra, at pp. 7-8, 93 Cal. Rptr.2d 678.)
We are not persuaded by appellant's reliance on Kenny A. and Kirk G. Those cases involved the commitment of juveniles to county jail, a matter governed by legislative prerogative, and the Legislature had not authorized such commitment. Here, by contrast, there was no commitment or *218 disposition. Indeed, appellant was deported before any disposition occurred. The court's referral for INS screening was more in the nature of an interlocutory or informal order. It was not a disposition of the juvenile court proceeding, nor was it punishment. Admittedly, deportation entails adverse consequences, but those consequences inhere in any deportation and are not dependent upon the deportee having been found to have committed a criminal act. Aliens who have entered the United States unlawfully may be deported even if they have led completely blameless lives. This is true of adults as well as minors. (Cal.Criminal Law: Procedure and Practice (Cont.Ed.Bar 5th ed.2001) § 48.27, p. 1344.)
The court's referral for INS screening, in our view, did not violate section 202. The referral order was an interlocutory or provisional order outside the scope of section 202. The matter of disposition of the juvenile court proceeding remained to be determined.
Appellant also contends that the failure to comply with section 202 resulted in a violation of his right to due process under the Fourteenth Amendment to the U.S. Constitution. Inasmuch as we have found no violation of section 202, appellant's contention fails.

DISPOSITION
The judgment (order of wardship) is affirmed.
We concur: HAERLE, Acting P.J., and RUVOLO, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the section entitled Sufficiency of the Evidence.
[1] Unless otherwise indicated, all statutory references hereafter are to the Welfare and Institutions Code.
[**] See footnote *, ante.