[No. G040765. Fourth Dist., Div. Three. Oct. 22, 2009.]

In re RAMON M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RAMON M., Defendant and Appellant.

**COUNSEL**

Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., Karl T. Terp and Scott Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MOORE, J.**—The minor, Ramon M., has been before the juvenile court on nine separate petitions. The most recent petition resulted in a one-year sentence in custody. Ramon argues that the court should have ordered him to serve the commitment in a juvenile facility rather than county jail. While this issue is moot, at the request of the parties and because it is likely to recur, we shall opine on it before dismissing this part of the appeal.

Ramon further claims that as to prior adjudications, the court failed to declare on the record whether the offenses were felonies or misdemeanors, and while this is purely a technical error, this argument has merit. With the exception of one provision, which we shall order slightly modified, we reject his final claim regarding his probation terms. We therefore affirm the court's orders, but remand for the limited purpose of declaring on the record whether the prior adjudications were felonies or misdemeanors.

I

FACTS

Ramon M. (Ramon) was 16 years old in October 2005. On October 25, a first amended petition was filed, alleging that Ramon committed criminal threats (Pen. Code, § 422; count one); aggravated assault (Pen. Code, § 245, subd. (a)(1); count two); participation in an unlawful street gang (Pen. Code, § 186.22, subd. (a); count three), and vandalism, a misdemeanor (Pen. Code, § 594, subds. (a), (b)(1); count four). The petition also alleged that counts one and two were committed for the benefit of a street gang. (Pen. Code, § 186.22, subd. (b)(1).)

On the same date, Ramon admitted the truth of the petition as to counts one and three, and the enhancement, admitting participating in and committing the offense for the benefit of the Barrio Pobre street gang. The court dismissed the remaining counts and the enhancement. Ramon was adjudicated a ward of the court, received credit for time served, and was released on probation subject to certain terms, including the condition that he not associate with gang members or be present in known gang areas.

From 2005 through June 2008, Ramon was in and out of custody and continuously on probation. Six additional petitions were filed. His offenses during the periods he was out of custody, all of which he admitted, included burglary, gang-related vandalism, and numerous probation violations, including violation of the gang terms. At the hearing on each petition, Ramon was

ordered to comply with all prior probation terms. Ramon turned 18 in October 2007.

By the spring of 2008, Ramon was out of custody after serving 180 days in a juvenile facility for probation violations. On three occasions between May 31 and June 26, 2008, Ramon was stopped by police in Barrio Pobre territory. On May 31, the police responded to a call in the early morning at the corner of Lincoln and Laxore, where it was reported that gang members were loitering and causing a disturbance. One of the responding officers, Chris Cooper, knew the area to be part of Barrio Pobre territory. When he arrived, he made contact with Ramon and two individuals who were with him, Brian and Edwin Alarrazabal, whom Cooper recognized as Barrio Pobre gang members. As he approached, Brian Alarrazabal threw down a switchblade, which Cooper retrieved.

On June 1, Anaheim Police Officer Jason States responded to a call at Lincoln and Laxore, an area he knew to be part of Barrio Pobre gang territory. States found Ramon with the Alarrazabal brothers and another individual outside of a liquor store. They had formed a semicircle around two African-American men, who reported that they had been approached and asked their gang affiliation.

Ramon identified himself to States as "Knuckles," said that he had just gotten out of juvenile hall, and identified himself as a member of the Barrio Pobre street gang. He said his moniker was due to his reputation as a fighter and he was proud to be a member of the gang. When States asked why he had approached the African-American men, Ramon responded that he "did not like [racial epithet] in his neighborhood."

When contacted by his probation officer about the June 1 incident, Ramon acknowledged that he was with Barrio Pobre gang members in gang territory at the time. He was admonished to refrain from such activity in the future.

On June 26, however, Anaheim Police Officer Mark Brydges contacted Ramon at the intersection of Embassy and Laxore, an area he knew to be Barrio Pobre territory, with three other individuals. Ramon was attempting to hide at the time. Ramon identified himself as "Knuckles," and when asked by the officer, he acknowledged he was on probation with gang terms in effect.

On June 30, 2008, the ninth petition, which is the subject of the instant appeal, was filed. The petition alleged eight paragraphs of probation viola-

tions. At the probation department's recommendation, Ramon was detained at the county jail pending further proceedings.

Ramon and his mother testified at the subsequent hearing. He admitted that after being released from juvenile hall, he frequently went into Barrio Pobre territory. He claimed that he went there to visit his daughter, who lived nearby with her mother.

On July 23, 2008, at the hearing's conclusion, the court made true findings as to four of the alleged probation violations, all of them regarding Ramon's association with gang members in gang territory. The court ordered Ramon committed to the custody of the probation department for placement in juvenile hall or an appropriate facility for 365 days, with credit for the 27 days already served. As Ramon was being held in county jail, he requested the court to place him in juvenile hall, but the court denied the request. Ramon now appeals.

## II

## DISCUSSION

*Commitment to County Jail*

Ramon argues that the court erred by keeping him in county jail pending the hearing on the ninth petition and for committing him to county jail thereafter. He argues that the juvenile court lacked authority to commit him directly to county jail because he was under age 19 at the time. On July 1, 2008, at the time of the initial detention hearing in the instant matter, Ramon, who was 18 years and some eight months old, was being housed in the county jail. Counsel did not object, and submitted on the issue of detention.

At the July 23, 2008 hearing, after the court found several of the allegations true, Ramon's counsel asked that Ramon be committed to juvenile hall. Counsel argued that a juvenile facility would better be able to ensure that Ramon received his medications, and stated that there had been problems with the medication in jail. The court stated that such medication requests were commonplace and directed counsel to draw up a "boilerplate" order for Ramon to receive his medication while in custody. The court then ordered Ramon to serve 365 days in custody, ordering him into the care of the probation department "for commitment to juvenile hall or the appropriate facility. . . ." The minute order states that the court denied Ramon's request to serve his commitment in juvenile hall.

Ramon argues this was improper. Ramon is now out of custody, and the parties agree that although the issue is technically moot, this court should nonetheless opine on the issue. Because this issue is one of public interest and likely to recur in the future, we exercise our discretion to do so. (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1621–1622 [267 Cal.Rptr. 746].) To do so, we must examine and harmonize a number of statutory provisions.

Under Welfare and Institutions Code section 202, subdivision (b) in part,[1] "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances."

■ Subdivision (e) of section 202 states "punishment," under that section, means the imposition of sanctions and does not include retribution. Permissible sanctions for minors include a number of options, including fines, community service, limitations on the minor's liberty as a condition of probation or parole, commitment to a detention facility such as juvenile hall, or commitment to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities.

Section 208.5 is part of a series of statutes controlling the custodial segregation of adults and juveniles. Subdivision (a) of section 208.5 states, in relevant part: "Notwithstanding any other law, in any case in which a minor who is detained in or committed to a county institution established for the purpose of housing juveniles attains 18 years of age prior to or during the period of detention or confinement he or she may be allowed to come or remain in contact with those juveniles until 19 years of age, at which time he or she, upon the recommendation of the probation officer, shall be delivered to the custody of the sheriff for the remainder of the time he or she remains in custody, unless the juvenile court orders continued detention in a juvenile facility."

Under section 737, subdivision (a): "Whenever a person has been adjudged a ward of the juvenile court and has been committed or otherwise disposed of as provided in this chapter for the care of wards of the juvenile court, the court may order that the ward be detained in the detention home, or in the case of a ward of the age of 18 years or more, in the county jail or otherwise as the court deems fit until the execution of the order of commitment or of other disposition."

---

[1] Subsequent statutory references are to the Welfare and Institutions Code.

Several cases have examined these provisions. In *In re Jose H.* (2000) 77 Cal.App.4th 1090 [92 Cal.Rptr.2d 228] (*Jose H.*), the minor was 17 at the time of his offense and turned 18 shortly before disposition. He was placed on probation and ordered to serve 120 days in county jail. (*Id.* at p. 1096.) The Sixth Appellate District found this improper, noting that section 202, subdivision (e) listed the various options for sanctions, which did not include county jail. Section 737, subdivision (a), was intended to permit detention in county jail only until disposition and did not expand the range of appropriate dispositions set forth in section 202. (*Jose H.*, at p. 1098.) Older cases (see, e.g., *In re Kirk G.* (1977) 67 Cal.App.3d 538, 539–540 [136 Cal.Rptr. 706]) expressly forbade the placement of a ward in county jail, and while those cases had been at least partly superseded by statutory amendments, the court believed that if the Legislature intended for disposition options to include county jail for wards over the age of 18, section 202 would have included such an option.

Finally, the court noted the problems posed by wards over the age of 18. "We sympathize with the dilemma of the juvenile court searching for an appropriate disposition for an 18-year-old ward. We understand the alternatives are limited, and vary from county to county. We also recognize that there may be circumstances in which an 18-year-old ward might prefer a county jail commitment to an alternative in the juvenile system. Nonetheless, the parties cannot, by stipulation, create statutory authority where none exists. We are constrained by the express language of the applicable statutes to hold that the juvenile court is not authorized to commit a ward to county jail. The juvenile court is a creature of statute, and remains unique and different from the adult court system. Should the Legislature see fit to expand the range of dispositional alternatives to include county jail for 18-year-old wards, they will do so. It is the province of the Legislature and not the courts to enact changes in the court's custodial disposition alternatives. Clearly, any change in current law must be addressed by the Legislature. Until then, the juvenile court is bound by those dispositional alternatives specified in Welfare and Institutions Code section 202, subdivision (e)." (*Jose H., supra*, 77 Cal.App.4th at pp. 1099–1100, fn. omitted.)

*In re Kenny A.* (2000) 79 Cal.App.4th 1 [93 Cal.Rptr.2d 678] (*Kenny A.*), was another decision of the Sixth Appellate District, and also addressed a ward who was 18 years old. (*Id.* at p. 4.) Because of the ward's age, the probation office recommended the ward be committed to the county jail. (*Ibid.*) Apparently mindful of the holding in *Jose H.*, the juvenile court committed the ward to juvenile hall for a period of 180 days, but added he " 'will then be committed to the county jail . . . .' " (*Kenny A.*, at pp. 4–5.) Reiterating its earlier ruling that a ward 18 years of age cannot be committed

directly to the county jail, *Kenny A.* concluded the disposition was unauthorized since it was "for all practical purposes, a county jail commitment." (*Id.* at p. 8.) The fact the juvenile court "did say that [the ward] was committed to juvenile hall" was of no moment because "[t]o accept this procedural subterfuge as proper would be to condone an unauthorized disposition by the juvenile court." (*Ibid.*)

The factual situation was somewhat different in *In re Charles G.* (2004) 115 Cal.App.4th 608 [9 Cal.Rptr.3d 503] (*Charles G.*), a decision of the Third Appellate District. The ward in *Charles G.* was 20 at the time he violated the terms of his probation. (*Id.* at p. 612.) When he was taken into custody, the probation department obtained a juvenile court order placing him in county jail pending the detention hearing. At the hearing, the court found a prima facie case the ward had violated probation and ordered detention continued in the county jail. The ward eventually admitted two allegations that he had violated his probation terms, and the court ordered him continued as a ward and to serve a period of confinement " 'in an authorized facility' " after which jurisdiction would be terminated. (*Ibid.*)

The court first addressed the propriety of continued jurisdiction over a ward who becomes an adult. The court found that such jurisdiction was appropriate and necessary to effect the intent of the Legislature. (*Charles G., supra,* 115 Cal.App.4th at p. 616.) The court also interpreted section 208.5 with regard to predisposition detention. The court interpreted the juvenile court's order as implicitly declining to exercise its authority to order the ward's continued detention in a juvenile facility. "The only flaw in the court's order is that section 208.5 requires a ward to be detained in 'a county institution established for the purpose of housing juveniles' before he may be 'delivered to the custody of the sheriff.' In other words, the court should have ordered appellant to be detained in a juvenile facility and, upon recommendation of the probation office, immediately transferred to county jail." (115 Cal.App.4th at p. 617.) The court found, however, that the ward was not prejudiced by this shortcoming.

With respect to the disposition, the court agreed with the essential holding of *Kenny A.* and *Jose H.* that a court could not commit a ward over the age of 17 directly to county jail. The court stated, however, that "it does not follow that the court cannot commit a ward 19 years of age or older to a juvenile detention facility with the understanding that, because the probation officer so recommends, the ward will be delivered to the sheriff for confinement in county jail pursuant to section 208.5. Such a disposition is *not* a 'procedural subterfuge' to 'condone an unauthorized disposition by the juvenile court.'

(*Kenny A., supra*, 79 Cal.App.4th at p. 8.) It is a legitimate application of the statutory scheme that allows the now-adult ward to be housed in a juvenile detention facility until the age of 19, at which time he or she must be delivered to a local adult facility unless the court orders continued detention in the juvenile facility. [Citation.]" (*Charles G., supra*, 115 Cal.App.4th at pp. 618–619.)

Thus, the real disagreement between *Charles G.* and the Sixth District cases, *Kenny A.* and *Jose H.*, is not with regard to the holding that a juvenile court cannot commit an 18-year-old ward to county jail—all three cases agree on that point. Their disagreement is based on the question of whether a ward can be transferred to an adult facility after he or she turns 19, in accordance with section 208.5.

■ And so we come at last to the case at bar. At the time of detention, Ramon was taken directly to county jail. This was improper. Under the procedure discussed in *Charles G.*, Ramon should have been initially placed in a juvenile facility. At that time, the probation department could have obtained an order moving him to county jail under section 208.5 or section 737, subdivision (a), pending disposition. ("[T]he court may order that . . . in the case of a ward of the age of 18 years or more, in the county jail or otherwise as the court deems fit until the execution of the order of commitment or of other disposition." (§ 737, subd. (a).)) Like the court in *Charles G.*, however, we agree that Ramon suffered no prejudice as a result of this impropriety.

■ Placement in county jail for 365 days at disposition is a different question. *Jose H., Kenny A.*, and *Charles G.* all agree that a court cannot commit an 18-year-old ward directly to county jail, and we agree this is the proper interpretation of the current statutes. We agree with the *Jose H.* court, which said: "We are constrained by the express language of the applicable statutes to hold that the juvenile court is not authorized to commit a ward to county jail. The juvenile court is a creature of statute, and remains unique and different from the adult court system. Should the Legislature see fit to expand the range of dispositional alternatives to include county jail for 18-year-old wards, they will do so. It is the province of the Legislature and not the courts to enact changes in the court's custodial disposition alternatives." (*Jose H., supra*, 77 Cal.App.4th at pp. 1099–1100.) We also agree with the *Jose H.* court that section 737, subdivision (a), by its express language, was intended to permit detention in county jail only until disposition and did not expand the range of appropriate dispositions set forth in section 202. (*Jose H.*, at p. 1098.)

That is as far as we must go to resolve this case. Unlike the ward in *Charles G.*, Ramon was under 19 at the time of disposition, and therefore the provision for transferring wards over that age does not enter into our decision here. We therefore find the juvenile court's order should have been more specific, directing the probation department to place him only in an appropriate *juvenile* facility. Thus, having decided this issue on the merits, we dismiss this portion of the appeal as moot.

*Felony or Misdemeanor Offenses*

Ramon next argues that the trial court failed to explicitly state whether several of his earlier offenses were felonies or misdemeanors. Specifically, he argues that the court failed to make such declarations with respect to its findings in the first amended petition, criminal threats and street terrorism, and its true finding as to the subsequent petition for second degree burglary.

Section 702 states: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." This provision requires strict compliance. (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1204 [60 Cal.Rptr.2d 889, 930 P.2d 1255].)

Respondent argues this claim should be time-barred, noting that Ramon failed to file a notice of appeal within 60 days as required by California Rules of Court, rule 8.400(d). Ramon argues that a dispositional order that fails to state whether the offense is a felony or a misdemeanor is tantamount to an unauthorized sentence. (*In re Ricky H.* (1981) 30 Cal.3d 176, 191 [178 Cal.Rptr. 324, 636 P.2d 13], superseded by statute on other grounds as noted in *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396 [234 Cal.Rptr. 103].) Given the California Supreme Court's recent ruling on the use of juvenile adjudications as strikes, we feel that Ramon has the better argument on this point. (*People v. Nguyen* (2009) 46 Cal.4th 1007 [95 Cal.Rptr.3d 615, 209 P.3d 946].)

■ This issue, however, is purely a technical one. The court's intent to treat the prior adjudications as felonies is clear from the minute orders on each petition, but case law holds that minute orders are insufficient when the court fails to state on the record whether the offense should be treated as a felony or misdemeanor. (*In re Ricky H., supra,* 30 Cal.3d at pp. 191–192.) While we find the court's intent clear, we are, of course, bound by this

precedent. We therefore remand for the limited purpose of the court's declaring on the record whether the stated offenses were to be treated as felonies or misdemeanors.

*Probation Terms*

Finally, Ramon claims the terms of his probation were unconstitutionally vague and overbroad. He specifically objects to the requirement to stay out of Barrio Pobre gang territory, arguing it interferes with his right to see his daughter, who lives in that neighborhood.

■ The juvenile court may "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) "A juvenile court enjoys broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile. [Citation.] That discretion will not be disturbed in the absence of manifest abuse. [Citation.]" (*In re Josh W.* (1997) 55 Cal.App.4th 1, 5 [63 Cal.Rptr.2d 701].)

Ramon's original terms of probation, imposed in October 2005, included the following: "11. Do not associate with anyone named by the court, your parent/guardian, probation officer, anyone on probation or parole, gang members/associates, users/sellers of narcotics/controlled substances or ___. [¶] 12. Not be in any area as indicated by court/probation officer where gang members congregate." The "Gang Terms and Conditions of Probation" added the following: "8. You are not to be present in any known gang gathering area of the Barrio Pobre gang as directed by your probation officer. [¶] 9. Your associates are to be approved by your probation officer and your parents/guardian. You are not to associate with any individuals whom you have met while in any County Institutions. You are not to associate with any member of the Barrio Pobre gang or any other gang as directed by your probation officer." (Capitalization omitted.) Ramon was repeatedly reminded of the terms and conditions of probation during the following years.

We focus only on the constitutionality of the probation terms, because Ramon, by failing to object below to the imposition of the probation terms, has forfeited all claims except a challenge "based on the ground the condition is vague or overbroad and thus *facially* unconstitutional." (*In re Sheena K.*

(2007) 40 Cal.4th 875, 878 [55 Cal.Rptr.3d 716, 153 P.3d 282], italics added (*Sheena K.*).)

■ "[T]he void for vagueness doctrine applies to conditions of probation. [Citations.] An order must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated. [Citation.]" (*People v. Reinertson* (1986) 178 Cal.App.3d 320, 324–325 [223 Cal.Rptr. 670].) A provision is overbroad if it prohibits a substantial amount of constitutionally protected conduct. (*People v. Rubalcava* (2000) 23 Cal.4th 322, 333 [96 Cal.Rptr.2d 735, 1 P.3d 52].)

Ramon claims that paragraph 9 of the gang terms is both vague and overbroad, citing *Sheena K., supra*, 40 Cal.4th at page 878. In that case, the court found a probation condition forbidding the minor's association with " 'anyone disapproved of by probation' " to be impermissibly vague because it did not include a requirement that the minor knew the people with whom she could not associate were disapproved by probation.

Such is not the case here. Unlike the provision in *Sheena K.*, the provision here required not avoiding association with disapproved individuals, but the requirement that Ramon actively seek approval for his associates. This language avoids the problem that his probation officer might disapprove of certain individuals without Ramon's knowledge, because he was required to actively seek it before associating with them. "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.]" (*Sheena K., supra*, 40 Cal.4th at p. 890.) This provision meets these requirements.

Ramon also argues the provision is overbroad, claiming that it requires him to seek the approval of his probation officer to have any contact with, for example, grocery clerks, mailmen or health care providers. Such an argument is belied by both context and common sense. The context of the provision relates to gang members and persons Ramon met in county institutions. No reasonable person would read this provision to mean that Ramon is required to seek prior approval to encounter people he does not yet know, or encountered only in incidental or formal situations. (See *People v. Bravo* (1987) 43 Cal.3d 600, 606 [238 Cal.Rptr. 282, 738 P.2d 336] [probation conditions should be given "meaning that would appear to a reasonable, objective reader"].)

Ramon also objects to the sentence in paragraph 9 that states: "You are not to associate with any member of the Barrio Pobre gang or any other gang as directed by your probation officer." He claims that this provision is vague because it is not restricted to known gang members. This is a close call. If the provision merely prohibited associating with any gang members, it would be clearly impermissible. (*In re Justin S.* (2001) 93 Cal.App.4th 811, 816 [113 Cal.Rptr.2d 466].) This provision, however, is tailored more narrowly, prohibiting Ramon from associating with members of a gang to which he belongs. A reasonable interpretation would be that Ramon would know many such individuals, or be able to identify them. But we agree that the better practice is to limit the provision to those individuals Ramon *knows* to be members of Barrio Pobre. (*Sheena K., supra,* 40 Cal.4th at p. 892.) We shall therefore order the probation term modified accordingly.[2]

Paragraph 8 of the gang terms requires Ramon to refrain from being present in known gang gathering areas of Barrio Pobre as directed by his probation officer. Ramon complains this provision interferes with his ability to visit his daughter and impermissibly delegates his right to travel to the probation officer. In cases involving gang members and associates, courts have readily upheld prohibitions on the probationer's presence in gang gathering areas against challenges that such conditions were vague, overbroad, and otherwise unconstitutional. (*In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1502 [281 Cal.Rptr. 6]; *In re Michael D.* (1989) 214 Cal.App.3d 1610, 1616–1617 [264 Cal.Rptr. 476].) Such provisions are closely tailored to the goal of keeping a probationer out of gang activity, and therefore not facially unconstitutional.

Further, Ramon's claims regarding his right to raise his daughter must also fail, as he does not offer any evidence that either his probation officer forbade him from arranging visits with his daughter, regardless of where she lived, or that visits could not be arranged at a different location. In any event, Ramon fails to cite to the portion of the record below where he objected to this provision, and our review is therefore limited to the question of whether the provision is unconstitutional on its face. (*Sheena K., supra,* 40 Cal.4th at p. 878.) The provision is not facially vague or overbroad, and therefore we find it valid.

---

[2] To the extent that the court's oral pronouncement was inconsistent, a modification that clarifies the probation term will resolve any inconsistency.

## III

## DISPOSITION

The court's orders are affirmed, and the matter is remanded with directions for the court to state on the record whether it intended to treat the offenses noted above as felonies or misdemeanors in compliance with Welfare and Institutions Code section 702. We further order the trial court to modify the last sentence of paragraph 9 of the Gang Terms and Conditions of Probation to state: "You are not to associate with known members of the Barrio Pobre gang or any other gang as directed by your probation officer."

Sills, P. J., and Rylaarsdam, J., concurred.

On October 30, 2009, the opinion was modified to read as printed above.