Filed 9/20/13  P. v. Ware CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREGORY WARE,<br><br>    Defendant and Appellant. | B242597<br><br>(Los Angeles County<br>Super. Ct. No. BA389488) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor H. Greenberg.  Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant Gregory Ware appeals from the judgment entered following a jury trial that resulted in his misdemeanor conviction of failure to disclose the origin of a recording or audiovisual work (Pen. Code, § 653w, subd. (a); count 1).[1] The trial court suspended imposition of sentence and placed defendant on probation for three years under certain terms and conditions, including the condition he stay away from the 5th Street corridor in Los Angeles.[2]

On appeal, defendant contends this "stay-away" order is unauthorized, unlawful, and a violation of his "federal and state constitutional rights to travel and freedom of movement, speech, association, and assembly." He contends his attorney was ineffective for failing to object on these constitutional grounds.

We shall affirm the judgment. The "stay-away" order is not constitutionally infirm. Defendant's counsel therefore was not ineffective for not objecting on those grounds.

## BACKGROUND

The area bounded by 3rd Street to 7th Street and from Spring Street to San Pedro Street is known as "the 5th Street corridor." Deon Joseph served as a Los Angeles police officer for about 14 years in the 5th Street corridor, which is "a rehabilitative recovery zone" and "actually stretches all the way to Central Avenue."

During this time, almost on a daily basis, Officer Joseph came upon DVD's which, based on his training and experience, were pirated, and he had observed street sales of

---

[1]    All further section references are to the Penal Code.

    This appeal is properly before this court. At the preliminary hearing, the magistrate denied defendant's motion to reduce the charge to a misdemeanor. The charge was pleaded in the information as a felony. (See *People v. Nickerson* (2005) 128 Cal.App.4th 33, 36-39.)

[2]    The record does not reflect the disposition of the allegations defendant had suffered two strikes under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and served three prior prison terms (§ 667.5, subd. (b)). His misdemeanor conviction renders these allegations inconsequential.

pirated DVD's "[h]undreds of times." A street vendor commonly spread out the DVD's "on the sidewalk for everyone to see" in a suitcase, a box, or on a blanket. A sale transpired when someone approached, pointed to a DVD, and the vendor exchanged cash for the DVD.

Officer Joseph knew defendant for about seven years. He saw him once or twice a week making street sales of various merchandise, including pirated DVD's, typically around San Julian Park. Defendant loitered in the park and on the sidewalk directly in front of the park. Officer Joseph had warned defendant to stop dozens, maybe hundreds, of times, in an attempt to get his voluntary compliance. Although defendant would pack up and leave, Officer Joseph would see defendant return. Once in 2006 or 2007, Officer Joseph gave defendant a ticket.

On September 30, 2011, about 3:30 p.m., while on vehicle patrol and in uniform, Officer Joseph saw defendant standing next to a suitcase on the sidewalk of 5th Street near San Julian Park. The suitcase was wide open, and stacked "on full display" were what Officer Joseph believed were pirated DVD's for sale. When a woman walked up and asked how much they were, defendant took a few steps towards her, looked back in Officer Joseph's direction, and closed the suitcase. Defendant told Officer Joseph the DVD's were not his and he was not selling them. He then admitted he had sold a couple while waiting for a friend to pick him up. Officer Joseph arrested defendant and confiscated the suitcase, which contained 100 pirated DVD's.

On October 31, 2011, at the preliminary hearing, the magistrate denied defendant's motion to dismiss the complaint or, alternatively, to reduce the charge to a misdemeanor. After noting defendant did not reside in the 5th Street corridor area, he ordered defendant "to stay away from the Fifth Street corridor area and . . . not [to] engage in the sale of any illegal or pirated DVD's during the pendency of this action." Defendant agreed to comply.

On November 28, 2011, Officer Joseph observed numerous DVD's or CD's on a blanket at about the same location where defendant's open suitcase had been when he was arrested on September 30. A few seconds later, defendant exited San Julian Park.

3

He wrapped the items with the blanket, placed the blanket inside a tote bag, and walked towards the park about two feet away. When Officer Joseph called out his name, defendant gave a "quick glance," put down the bag, and entered the park. At Officer Joseph's directive, defendant exited the park and was arrested based on the DVD's on the blanket and for violating the court order to stay away from that area. The 35 confiscated DVD's were pirated.[3]

At trial, defendant presented evidence that he possessed pirated DVD's for his own viewing and on September 30, 2011, he was waiting for an individual who was to help him move his things to his Compton residence, and that was the reason why he had the suitcase with the pirated DVD's. Defendant testified he did not sell pirated DVD's; rather, he only sold second-hand original DVD's, occasionally. He admitted having multiple prior contacts with Officer Joseph on 6th and San Pedro Streets. On September 30, 2011, he told Officer Joseph he was not selling anything. He denied telling Officer Joseph he had sold a few DVD's that morning or that he sold pirated DVD's. Defendant denied he was selling anything on November 28, 2011. Defendant admitted selling illegal DVD's before these two arrests but denied he sold them on the days of his arrests.

In a tape-recorded police interview, defendant told Officer Joseph he sold "bootleg" DVD's. Defendant testified he was afraid and misspoke.

The jury found defendant guilty of the charged offense but not true the allegation the offense involved at least 100 articles each of audio recordings and audio visual works (§ 653w, subd. (b)(1)). The trial court ruled the information was deemed amended to plead count 1 as a misdemeanor (§ 17, subd. (b)).

On May 24, 2012, the trial court suspended imposition of sentence and placed defendant on probation for a three-year period under certain terms and conditions. At the hearing, defendant's counsel objected to a "stay-away" probation condition as premature, because defendant had an appointment with a doctor in the area and defendant's medical

---

[3]     This case arises solely from the September 30, 2011 incident.

4

issues had not yet been resolved nor had "another doctor . . . been located and assigned to him outside of the restricted area." The court ordered defendant "to stay away from the 5th Street corridor[, which is] bounded by 3rd Street to 7th Street and Spring to San Pedro." The court tentatively ruled defendant would be allowed "to be in the area in the afternoon of June 24th, only, to meet with [his] doctor, discuss [his] condition with [the doctor], and also to get an additional referral" but, after a discussion with counsel, some of which was off the record, the court ordered defendant to appear in court on May 30 with a letter from his doctor regarding a referral outside the 5th Street Corridor area.

On May 30, 2012, the court modified the "stay-away" order to allow defendant to be in the 5th Street corridor only on the two dates when he had scheduled medical appointments, on July 2, 2012, from 7:00 a.m. until noon and on July 9, 2012, from 1:00 p.m. until 4:00 p.m. The court ordered defendant to leave the area on those dates upon completing his medical appointments. The court admonished defendant this did not "mean that if you see someone that you know you can't say 'hi' as you walk by. But you need to keep moving. The bottom line is going to be, if I find out . . . your blood was drawn right at 8:00 and you're found in the area after at 11:00, then I am going to wonder why you've been there for three hours and we are going to have a problem." The court provided defendant with a copy of the minute order so he could show it to his medical provider, to demonstrate an out-of-area referral was a condition of probation and to help him get a prompt referral to another clinic outside the area.

The court further admonished defendant to contact his doctor by phone to see if he could get a referral before the dates of his July appointments. Defendant's attorney advised the court that defendant was on general relief and had to be in the area to see his case worker. The prosecutor responded defendant "just got this eligibility worker" and he could switch to another over the phone. After noting defendant "is not allowed to see his eligibility worker without having an appointment phoned in first," the court directed defendant to call to obtain an eligibility worker outside that area.

On July 10, 2012, the trial court continued the matter to September 6, 2012, as to defendant's quest to find a doctor and program outside the restricted area.

5

On July 12, 2012, defendant filed his notice of appeal from the judgment.

## DISCUSSION

**1.    No Ineffective Assistance of Counsel Shown**

Although defendant acknowledges he did not object to the "stay-away" probation condition on constitutional grounds, he contends the constitutionality of this condition is properly before this court, because his counsel was ineffective for failing to object on these grounds. He has failed to meet his burden.

" 'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant.  The proof . . . must be a demonstrable reality and not a speculative matter.' [Citation.]" (*People v. Karis* (1988) 46 Cal.3d 612, 656.)  " 'To prevail on a claim of ineffective assistance of counsel, defendant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice." ' [Citation.]  Prejudice occurs only if the record demonstrates 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (*People v. Lucero* (2000) 23 Cal.4th 692, 728.)

"We need not and do not determine whether [defendant] established the first prong, deficient performance, because we conclude . . . even if counsel's performance was deficient, [defendant] has failed to sustain his burden on the issue of prejudice. [Citation.]" (*In re Alvernaz* (1992) 2 Cal.4th 924, 945; see also *Strickland v. Washington* (1984) 466 U.S. 668, 697.)  As we shall explain, a result more favorable to defendant would not have been reasonably probable if his counsel had objected on the constitutional grounds raised in this appeal.  (See also *People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091 [counsel "not required to make futile motions or to indulge in idle acts to appear competent"].)

6

## 2. "Stay-Away" Probation Condition Not Unconstitutional

Defendant contends the "stay-away" condition constitutes a banishment in violation of his "federal and state constitutional rights to travel and freedom of movement, speech, association, and assembly."[4] No constitutional infirmity exists.

"The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and what conditions should be imposed. [Citations.] . . . Most conditions . . . stem from the sentencing court's general authority to impose any 'reasonable' condition that it 'may determine' is 'fitting and proper to the end that justice may be done. . . .' [Citation.]" (*People v. Welch, supra,* 5 Cal.4th at p. 233.) The court is authorized to "prescribe probation conditions in order to foster rehabilitation and to protect public safety. [Citations.] However, probation conditions may be challenged on the grounds of unconstitutional vagueness and overbreadth. [Citation.] A probation condition may be 'overbroad' if in its reach it prohibits constitutionally protected conduct. [Citation.]" (*People v. Freitas* (2009) 179 Cal.App.4th 747, 750.)

Defendant's overbreadth challenge is unsuccessful. "Conditions of banishment affect the probationer's basic constitutional rights of freedom of travel, association and assembly. [Citations.] Thus, in order to survive constitutional scrutiny, such conditions not only must be reasonably related to present or future criminality, but also must be narrowly drawn and specifically tailored to the individual probationer." (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084.) The "stay-away" probation condition crafted by the trial court is reasonably related to the offense he committed and is narrowly drafted to

---

**4** Defendant also contends the stay-away probation condition has no relationship to the crime of which he was convicted; the condition relates to conduct which is not in itself criminal; and it forbids conduct not reasonably related to future criminality. He has forfeited these contentions by failing to raise them below. A defendant may not complain of the unreasonableness of probation conditions for the first time on appeal. (*People v. Welch* (1993) 5 Cal.4th 228, 233-237.)

avoid impingement on defendant's constitutional rights at issue, i.e., "to travel and freedom of movement, speech, association, and assembly."

The court ordered defendant "to stay away from the 5th Street corridor[, which is] bounded by 3rd Street to 7th Street and Spring to San Pedro." During the preceding seven years, Officer Joseph had observed defendant in this area, once or twice a week, selling pirated DVD's. Despite Officer Joseph's repeated warnings and a ticket for such unlawful activity, defendant was incorrigible. Although appearing to comply with Officer Joseph's directive to stop selling and leave, he would return later. Defendant admitted he knew his selling of pirated (bootlegged) DVD's was unlawful. On September 30, 2011, upon spotting Officer Joseph, defendant made a furtive attempt to hide his illegal sale activity by closing his suitcase with the pirated DVD's. At the preliminary hearing, the magistrate ordered him to stay away from the 5th Street corridor and not to sell pirated DVD's. Defendant agreed to comply. Instead, on November 28, 2011, less than two months after his arrest on September 30 and less than a month after that order, defendant resumed his unlawful sale of pirated DVD's at almost the exact spot where his suitcase had been located when he was arrested by Officer Joseph.

In view of the above, the trial court was entitled to conclude defendant would continue such recidivist criminal behavior unless defendant's presence was prohibited in the 5th Street corridor area. This area is identified in specific detail and its particular borders are narrowly drawn to conform to the general area of defendant's crimes. Defendant's constitutional rights to speech, association, and assembly were not impinged by the challenged "stay-away" order. The "stay-away" order only prohibits defendant's exercise of his right to speech, association, and assembly in a specific, limited area, which restriction is reasonably related to further defendant's rehabilitation and to reign in his proclivity to crime. (See *In re Ramon M.* (2009) 178 Cal.App.4th 665, 678 [probation condition that the defendant refrain from being present in known gang gathering areas of Barrio Pobre as directed by his probation officer closely tailored to further goal of keeping probationer out of gang activity and not overbroad as interfering with his ability

8

to visit his daughter and impermissibly delegating his right to travel to the probation officer].)

Moreover, probation conditions that otherwise might be deemed overbroad "will pass muster if tailored to fit the individual probationer. [Citation.]" (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1373.) It is undisputed that defendant did not live in the 5th Street corridor area. Prohibiting defendant's presence in the 5th Street corridor area therefore does not prevent him from traveling to and from his home. (*Ibid.* [restriction on travel to gang territory might be proper for a minor living outside the gang's territory but overbroad for a minor "who lives, works, or goes to school within that area"].)

Defendant contends that if the "stay-away" order is not per se unconstitutional, this court nonetheless should modify the order to allow him "to enter the area for purposes of continuing his medical care and visiting his eligibility worker, [because] both are located within the banned zone." His contentions are unsupported by the record.

The trial court did not, contrary to his claim, "impose[] the stay-away order without limitation prohibiting defendant's mere presence in the area at any time for any reason." The record reflects the court's willingness to modify the original "stay-away" order to accommodate defendant's medical needs.

The order expressly allowed defendant "to be in the 5th Street corridor . . . on July 2, 2012 from . . . 7:00 a.m. until noon and on 07-09-12, from 1:00 p.m. until 4:00 p.m." The trial court did not completely refuse to allow him to see his doctor or have laboratory work performed in that area. Also, the court did not absolutely bar him from seeing his case worker in that area, but directed that he phone for an appointment first and initiate attempts to obtain a case worker outside the area. Additionally, defendant has pointed to no evidence in the record that he was unable to obtain medical assistance or a replacement for his eligibility worker outside the restricted area after July 10, 2012, the date of the last court hearing reflected in the record on appeal.

**DISPOSITION**

The judgment is affirmed.

GRIMES, J.

We concur:

RUBIN, Acting P. J.

FLIER, J.