Filed 7/1/13  P. v. Rodriguez CA
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038431 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS120724) |
| v. | |
| JORGE RODRIGUEZ, | |
| Defendant and Appellant. | |

In a negotiated disposition, defendant Jorge Rodriguez pleaded no contest to carrying a loaded firearm in a public place (Pen. Code, § 25850, subd. (a)(2))[1] and misdemeanor street terrorism (§ 186.22, subd. (a)) and admitted a special allegation that he knew or reasonably should have known that the firearm was stolen (§ 25850, subd. (c)(2)).  The trial court suspended imposition of sentence and placed him on felony probation for three years.  On appeal, defendant challenges four of his probation conditions as unconstitutionally vague and/or overbroad.  We conclude that the "stay-away" condition is impermissibly vague but reject defendant's other contentions.  We reverse the order and remand the case to permit the trial court to clarify the stay-away condition.

---

[1]     Further statutory references are to the Penal Code unless otherwise noted.

# I. Background

Because there was no preliminary examination, we take the facts from the probation report.

On March 1, 2012, Soledad Police Department gang officers e-mailed fellow officers that they had received information that defendant "was in possession of a handgun with orders to take out (kill) any Norteno gang drop out [*sic*] on sight." Defendant "was looking to put in work, or commit violent criminal acts for the gang," the e-mail explained, "to establish a name for himself within the Norteno Criminal Street Gang." On April 18, 2012, an e-mail sent out for officer safety purposes advised that "Norteno shot callers (gang leaders) had ordered street gang members to shoot gang drop outs [*sic*] on sight. They were also ordered to wear black hooded sweaters, or sweatshirts with their hoods on at all times." The e-mail said defendant had recently been seen in a YouTube video with known Norteños, openly wearing gang colors, displaying gang signs, and showing gang tattoos. He had also been seen in photographs with known gang members, some of whom had recently been arrested for a gang-related drive-by shooting.

Around 6:00 p.m. on April 18, 2012, officers arriving for a community presentation at a Soledad middle school saw defendant, wearing a dark black and gray hooded jacket, walking in front of the school. Aware that he was on probation with search and gang conditions, officers searched him for weapons and found a nine millimeter handgun concealed in the waistband of his pants. The gun was "loaded with two bullets," and the magazine contained "eight live bullets." A records check revealed that the gun had been reported stolen in Bakersfield.

Defendant was arrested and booked into the county jail. He entered his pleas and admission in May, was placed on probation in June, and filed a timely notice of appeal.

## II.  Discussion

### A.  Stay-Away Condition

Condition No. 13 requires defendant "to stay away from any public school unless you are a registered student at that school or have permission in advance from your probation officer."  Defendant contends that the condition is unconstitutionally vague and unreasonably overbroad.

Citing this court's decision in *People v. Barajas* (2011) 198 Cal.App.4th 748 (*Barajas*), the Attorney General concedes that a proximity descriptor must be added.  She suggests we modify the condition to state that defendant must stay at least 150 feet away from any public school.  That "resolves part of the problem," defendant responds, "but still leaves unresolved the parameters of the word 'school.'"  The condition is also unreasonably overbroad, he argues, because it appears to "banish" him from areas "where he legitimately might be without any appreciable risk of increase in criminality" and from areas "where he must be in order to further his rehabilitation."  We agree that the condition is vague and must be modified, but we reject defendant's overbreadth challenge.

A trial court has broad discretion to impose such reasonable probation conditions "as it may determine are fitting and proper to the end that justice may be done . . . and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1, subd. (j).)  "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), abrogated by Prop. 8 on another ground as noted in *People v. Wheeler* (1992) 4 Cal.4th 284, 290-292.)  "The [*Lent*] test is clearly in the conjunctive, that is, the three factors must all be found to be present in order to invalidate a condition of probation." (*People v. Balestra* (1999) 76 Cal.App.4th 57, 65, fn. 3; see *Lent,* at p. 486, fn. 1.)

3

"'[P]robation is a privilege and not a right, and . . . adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights . . . . [Citations.]' [Citation.]" (*People v. Leon* (2010) 181 Cal.App.4th 943, 948.) But "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).)

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' [Citation.] The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions. [Citations.]'" (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.]" (*Ibid.*)

In *Barajas*, this court concluded that the word "'adjacent'" in a probation condition prohibiting the defendant from being "'adjacent to any school campus during school hours'" rendered the condition impermissibly vague. (*Barajas*, *supra*, 198 Cal.App.4th at p. 760.) "At a sufficient distance, most reasonable people would agree that items are no longer adjacent," the court explained, "but where to draw the line in the continuum from adjacent to distant is subject to the interpretation of every individual probation officer charged with interpreting th[e] condition." (*Id.* at p. 761.) "To avoid inviting arbitrary enforcement and to provide fair warning of what locations should be avoided," the court ordered the condition modified to replace "'adjacent to'" with "'on or within 50 feet'" of any school campus. (*Ibid.*)

We confront a similar issue here, because "away from" is a relative concept. A person standing across the street from a school is "away from" it, but so is a person who

4

is five blocks or five miles distant. The condition must be modified to give defendant fair notice of how far "away" from schools he must remain. The Attorney General suggests that 150 feet is appropriate to protect the community, given defendant's conviction for carrying a loaded gun with which he allegedly planned to "take out" Norteño gang dropouts on sight. Defendant does not propose a shorter distance. That notwithstanding, we believe the trial court is in the better position to determine just how far away from public schools this particular defendant must remain. We will remand the case to permit the trial court to make that determination and modify the condition accordingly.

Defendant contends that the stay-away condition remains vague even with a proximity descriptor, because the meaning of "school" is unclear. Is he prohibited, he asks, from being a certain distance from a school *building*, or from the entire school campus?

The condition in *Barajas* enjoined the defendant from being "on or within 50 feet of any school *campus* during school hours . . . ." (*Barajas*, *supra*, 198 Cal.App. 4th 748, 763, italics added.) We are not convinced, however, that "public school campus" is significantly clearer than "public school." Here again, the trial court is in the better position to clarify the scope of the condition it imposed. The court may want to make the perimeter of the school grounds the relevant reference point. Alternatively, it may want to order defendant to remain a certain distance away from any school building. It may want to establish some other reference point. We will instruct the trial court, on remand, to clarify the scope of its prohibition.

We reject defendant's contention that the stay-away condition is unreasonably overbroad. "[A] condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Lent*, *supra*, 15 Cal.3d at p. 486.) The condition the trial court imposed here was expressly designed "to protect the community" and to "try to do something to get people like this young defendant away

5

from the gangs." Defendant was arrested in front of a middle school, armed and allegedly looking to "take out" Norteño gang dropouts on sight. The condition ordering him to stay away from any public school aims to protect that segment of the public that his crimes suggested might be most at risk. We reject the contention that it does so at the expense of defendant's rehabilitation. Contrary to his assertion, the stay-away condition does not "ban him from areas where he must be in order to further his rehabilitation." By its plain terms, it allows defendant to be present as "a registered student" of a school, and it also permits his presence on a school campus if his probation officer determines, in advance, that there is a legitimate need for such an accommodation.

### B. Curfew Condition

Condition No. 16 requires defendant "not to be out of your home between 8:00 p.m. and 5:00 a.m. without prior approval of the Probation Officer." He complains that the condition is overbroad. His crimes did not occur during those hours, he argues, and it is unreasonable to require an adult to obtain advance approval "every time he might be outside his home past 8:00 p.m." He suggests that a 10:00 p.m. curfew would be more appropriate. We disagree.

The curfew condition satisfies the *Lent* test. (*Lent*, *supra*, 15 Cal.3d at p. 486.) First, it is related to defendant's crimes—street terrorism and carrying a loaded firearm in a public place. The probation report highlighted jail booking records noting that defendant admitted being a Norteño gang member and listed Sureños and gang dropouts as his "enemies." He was allegedly looking for Norteño gang dropouts when he was arrested, having been ordered to shoot them on sight. The trial court could reasonably have concluded from these facts that he posed a significant danger to the community that warranted significant limitations on his right to be outside, especially at night. The court expressly so concluded, as evidenced by its response when defendant protested that he did not understand why he could not be out later. "The reason you can't be out later," the

6

court explained, "is because you're a gang member and people -- citizens in this community have a right to be free from people like you, especially after dark, when you're out there wearing your hooded sweat shirt and carrying loaded guns around."

The curfew is also reasonably related to defendant's future criminality. (*Lent*, *supra*, 15 Cal.3d at p. 486.) As the trial court made clear, "[t]he Court has looked very carefully at the defendant's history in this matter and his contacts with gang members, and it's very clear to the court that the defendant is very involved in a criminal street gang in Monterey County. Monterey County has a very significant criminal street gang problem. . . . These gangs create problems for each other. They kill each other. They hunt each other, and they torture each other. . . . They cause no end of disturbance within neighborhoods, within residences, and within families. . . . The Court considers these conditions necessary to try to do something to not only protect the community that are law abiding citizens but also . . . to get people like this young defendant away from the gangs. There are few things that the Court can do. . . . [The conditions imposed] are one of the few things that the Court has to try to impact young defendants and keep them out of prison; keep them from continuing this type of terror in our community."

Defendant argues that a 10:00 p.m. curfew would be more appropriate. We disagree. The fact that he was arrested at 6:00 p.m. does not mean the trial court abused its discretion in imposing the 8:00 p.m. curfew, since there is no reason to believe that a gang member seeking to make his mark by killing gang dropouts on sight would confine his activities to the daylight hours. The court could reasonably have concluded that such a person could be more dangerous after dark, when he could more easily avoid detection.

We are not persuaded that the condition is overbroad simply because defendant was, at 18, legally an adult when the trial court imposed the curfew. "[P]robationary proscriptions against gang-related conduct are equally proper when imposed upon adult offenders . . . ." (*People v. Lopez* (1998) 66 Cal.App.4th 615, 625-626 [affirming broad gang condition imposed upon a defendant "in his early twenties" as an "essential

7

element" of his rehabilitation].)  The curfew serves a rehabilitative purpose here. Defendant told the court that he wanted to get a job and enroll in college upon his release from custody.  He acknowledged the difficulty of staying away from gang life but offered, "I'll give it a try."  The 8:00 p.m. curfew aids his rehabilitation in at least two ways—by making it easier for him to avoid situations that might tempt him to engage in gang activities and by making it easier for his probation officer to monitor his whereabouts and, ultimately, his compliance with the gang-related conditions of his probation.

Defendant argues that it is "unreasonable" to require him to obtain advance approval "every time he might be outside his home past 8:00 p.m."  The condition is not so restrictive as he contends.  It does not preclude the probation officer from granting defendant categorical permission to be outside after 8:00 p.m. for a specific purpose, such as attending an evening class.

We conclude that the curfew condition (Condition No. 16) requires no modification.

### C.  Gang-Gathering Area Condition

Condition No. 17 requires defendant "not to visit or remain in any area you know or have reason to know or are told by the probation officer to be a gang gathering area. The terms 'gang' in these conditions refers to a criminal street gang as defined in . . . Penal Code section 186.22."  Defendant claims the condition is unconstitutionally vague because "gang-gathering area" is not defined.  We disagree.

In *Barajas*, this court concluded that a probation condition requiring the defendant "'not to visit or remain in any specific location which you know to be or which the probation officer informs you to be an area of criminal street gang activity'" was not impermissibly vague.  (*Barajas*, *supra*, 198 Cal.App.4th at pp. 754, 760.)  The court reasoned that "[t]he knowledge condition suffices to give defendant fair warning of what

8

areas to avoid and ensures that he will not be found in violation due to a factual mistake, accident, or misfortune." (*Id.* at p. 760.) The same reasoning applies here, where the condition defendant challenges includes a knowledge requirement that gives him fair warning and protects him from arbitrary enforcement.

But what if he "stops to talk to a gang member who is sitting on a bench," defendant asks. "[D]oes this become a 'gang-gathering area?'"

"'A probation condition which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates due process.' [Citation.]" (*People v. Moore* (2012) 211 Cal.App.4th 1179, 1184.) But the fact that a defendant or his counsel can posit a hypothetical about the application of a probation condition does not mean the condition is unconstitutionally vague. Probation conditions need not be stated so exactingly as to preclude any possibility of misinterpretation or misapplication. (*Barajas*, *supra*, 198 Cal.App.4th at p. 762.) The law requires "''''*reasonable* specificity,'''''" not "''''"mathematical certainty."''''" (*Ibid.*) "'In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principle[] that "abstract legal commands must be applied in a specific *context*."'" (*Ibid.*)

In the context of this case, defendant's park bench hypothetical is unpersuasive. The record establishes that the trial court "very carefully" considered defendant's history and his gang contacts. It was "very clear" to the court that defendant was "very involved in a criminal street gang in Monterey County" and that his "life [wa]s very involved with the gang culture here." "He knows what those gang gathering areas are," the court concluded. "He knows what residences those are. He knows what locations those are. They are not a secret. They are not a secret to him. They are not a secret to the probation department. They are not a secret to law enforcement."

On similar facts, the court in *In re Michael D.* (1989) 214 Cal.App.3d 1610 rejected a vagueness challenge to a probation condition requiring that the minor not "'be

9

present in any known gang gathering area.'" (*Id.* at p. 1616.) The minor in that case "was a self-confessed member of the Middleside gang in Santa Ana." (*Ibid.*) He had been a member of the gang for five years, "had been involved in fights as a result of his gang affiliation," and considered the gang members "'his brothers.'" (*Id.* at pp. 1616-1617.) "Given the facts of this case," the court concluded, "requiring minor to stay out of known 'gang-gathering areas' is neither unreasonably vague nor unconstitutional." (*Id.* at p. 1617; see also *In re Ramon M.* (2009) 178 Cal.App.4th 665, 678 ["In cases involving gang members and associates, courts have readily upheld prohibitions on the probationer's presence in gang gathering areas against challenges that such conditions were vague, overbroad, and otherwise unconstitutional."].)

We conclude that the gang-gathering area condition (Condition No. 17) requires no modification.

### D.  No New Tattoos Condition

Condition No. 22 requires defendant to "not obtain any new tattooing [or] change or add to any existing tattooing upon your person.  Permit photographing of any tattoos you do have."  He complains that the condition is unconstitutionally overbroad because it applies to *all* tattoos, not merely gang-related ones, thus violating his constitutional free speech rights.  The condition is also unreasonably overbroad, defendant maintains, because the prohibition against changing any existing tattoo would prevent him from *removing* a gang tattoo, "which is not at all reasonably related to the state's interest [in] deterring criminal behavior . . . ."  We cannot agree.

In *In re Antonio C.* (2000) 83 Cal.App.4th 1029 (*Antonio C.*), the Fifth District Court of Appeal upheld a probation condition barring a 15-year-old from obtaining *any* new tattoos, reasoning that since minors are prohibited from obtaining permanent tattoos

10

with or without parental consent (§ 653[2]), the challenged condition was analogous to the condition requiring him to obey all laws. (*Antonio C.*, at p. 1035.) "Moreover," the court held, "the condition is sufficiently related to his rehabilitation, and is a reasonable exercise of the juvenile court's supervisory function to provide for his safety and protection." (*Ibid*.) The court rejected the minor's argument that the condition infringed on his constitutional right to free speech: "Assuming, without deciding, that tattoos and related skin markings constitute speech under the First Amendment [citation], the probation condition does not unduly burden Antonio's free speech rights. The United States Supreme Court has long held that while nonverbal expressive activity cannot be banned because of the ideas it expresses, it can be banned because of the action it entails. For example, burning a flag in violation of an ordinance against outdoor fires may be punished, whereas burning a flag in violation of an ordinance against dishonoring a flag may not. [Citation.] Here, the probation condition, which is content neutral, temporarily prohibits Antonio from self-expression through permanent skin disfigurement. Its focus is the manner in which the message is conveyed, not the message itself. As such, it constitutes a reasonable manner restriction on Antonio's free speech rights." (*Antonio C.*, at p. 1035.)

In *In re Victor L.* (2010) 182 Cal.App.4th 902 (*Victor L.*), the First District Court of Appeal upheld a probation condition prohibiting an 18-year-old from obtaining any new tattoos, noting that the language of the challenged condition was almost identical to the language of the condition the *Antonio C.* court had approved. (*Id.* at p. 908.) "We are reluctant to hold unconstitutional language which was specifically prescribed by another Court of Appeal," the court stated. (*Victor L.*, at p. 928.)

---

[2] Section 653 provides in pertinent part that "[e]very person who tattoos or offers to tattoo a person under the age of 18 years is guilty of a misdemeanor."

The court rejected an age-related argument similar to the argument defendant makes here. "The gist of Victor's argument appears to be that tattoo conditions of probation become unenforceable after the probationer reaches age 18 because California law does not prohibit the tattooing of a person over 18. [Citation.] But he overemphasizes the role of the penal law in this context. We agree with the constitutional analysis of *Antonio C.* . . . , and conclude that the prohibition on acquiring tattoos while on juvenile probation is a proper condition for gang members or those at risk of becoming gang members, regardless of their age, so long as they remain under the juvenile court's jurisdiction." (*Victor L.*, *supra*, 182 Cal.App.4th at p. 928.)

Observing that "[j]ust because it is lawful for an 18 year old to get a tattoo does not mean it is wise," the court refused to modify the condition by limiting its prohibition to the acquisition of new tattoos "'with gang significance.'" (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 929-930.) It did so for two reasons. First, "[t]attoos are . . . commonly worn by gang members to show gang affiliation. [Citations.] Whether tattoos are gang related or not, a heavily tattooed appearance tends to give rise to prejudices or suspicions about the tattooed person—warranted or not—that could interfere with a ward's future aspirations, such as employment opportunities. Thus, the prohibition on tattoos tends to steer wards away from gang appearance, gang identity, and the social stigma sometimes attached to tattoos." (*Ibid.*)

Second, "gang tattoos may employ obscure symbols not readily recognized or catalogued as gang tattoos. [Citation.] Thus, a complete ban on new tattoos enhances the enforceability of the condition." (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 929-930.) Because these factors made the tattoo ban part of a program of reform and rehabilitation, the total ban on new tattoos "for the remainder of Victor's probationary period [wa]s not overbroad." (*Id.* at p. 930.)

We find the reasoning of *Antonio C.* and *Victor L.* persuasive. Although defendant is not a minor, we believe a content-neutral prohibition on acquiring new tattoos while on

probation is a proper condition for adult gang members so long as they remain on probation under the superior court's jurisdiction.  Accordingly, we conclude that the no new tattoos condition (Condition No. 22) requires no modification.

### III.  Disposition

The order of probation is reversed.  On remand, the trial court is directed to modify the stay-away condition (Condition No. 13) to clarify how far away defendant must remain from a relevant reference point or points.


_____
Mihara, J.


WE CONCUR:



_____
Premo, Acting P. J.



_____
Grover, J.


13