Filed 6/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | H039825<br>(Santa Clara County<br> Super. Ct. No. JV39630) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>            v.<br><br>A.S.,<br><br>        Defendant and Appellant. | |

**STATEMENT OF THE CASE**

On October 25, 2012, the Santa Clara County District Attorney filed a juvenile wardship petition alleging that 16-year-old A.S. committed the following offenses:  first degree burglary (Pen. Code, §§ 459/460, subd. (a); count 1),[1] two counts of resisting, delaying, or obstructing an officer (§ 148, subd. (a)(1); counts 2 and 4), prowling (§ 647, subd. (h); count 3), and possession of 28.5 grams or less of marijuana (Health and Saf. Code, § 11357, subd. (b); count 5).  On December 3, 2012, A.S. admitted counts 1, 2, and 3, and counts 4 and 5 were dismissed.  The juvenile court granted deferred entry of judgment and placed A.S. on probation.

---

[1] Subsequent unspecified statutory references are to the Penal Code.

On March 4, 2013, the Santa Clara County District Attorney filed a second juvenile wardship petition alleging that 17-year-old A.S. committed the following offenses: criminal threats (§ 422; count 1), driving without a license (Veh. Code, § 12500, subd. (a); count 2), resisting, delaying, or obstructing an officer (§ 148, subd. (a)(1); count 3), and possession of 28.5 grams or less of marijuana (Health and Saf. Code, § 11357, subd. (b); count 4). A.S. admitted counts 2, 3, and 4 on May 17, 2013. At the conclusion of a contested jurisdiction hearing on May 17, 2013, the court found that A.S. had made a criminal threat, and it declared the offense to be a felony.

On May 31, 2013, the court declared A.S. to be ward of the court. The court ordered that A.S. remain on probation. Among the various conditions of probation, the court ordered that that A.S. "have no contact of any type" with Hoang D., Irene Z., and Paul T.

A.S. now appeals from the judgment of wardship. On appeal, he contends that there was insufficient evidence that he made a criminal threat. He also contends that the no-contact probation conditions are unconstitutionally vague and overbroad. As set forth below, we will affirm.

## STATEMENT OF THE FACTS

On January 14, 2013, A.S.'s mother, T.W., phoned Paul Thacker, a family friend. During the phone call, Thacker heard A.S. and T.W. fighting. Thacker heard T.W. scream and say, "Get your hands off me." Thacker recorded the phone call and ran to the San Jose home that T.W. and A.S. shared.

When Thacker arrived at the house, T.W. stated that A.S. was upstairs. Thacker went upstairs and played the recorded phone call for A.S. Thacker said, "You don't treat your mom like this. You don't disrespect your mom." A.S. became upset and told Thacker to "stay out of his business." A.S. stated to Thacker, "I'm gonna shoot your fucking ass with my Glock." A.S. loudly said, "I'm gonna kill your fucking ass."

2

Thacker "was in fear" when A.S. made the comments. Thacker exited the house. As he walked down the house's stairs, he was "scared," "upset," and "shaking."

Thacker called 911 from outside the house. While Thacker was on the phone with 911, he saw A.S. run down the house's stairs. Thacker "was in fear" when A.S. was running down the stairs. A.S. "put his hand in [Thacker's] face like it was a gun." A.S. loudly said, "pow, pow, pow." He also said, "I swear to God I'm gonna shoot your fucking ass." He then left the area. Thacker feared for his safety. He believed that A.S. could actually shoot him with a gun. He noted that, although he had never seen A.S. with a gun, he had seen A.S. with a B.B. gun.

After A.S. left, Thacker talked to T.W. for "a little bit." Thacker then walked to his own house. As he walked, he "was looking over [his] shoulder" because he did not know where A.S. was. He was "nervous" as he walked home.

Approximately four hours after A.S. threatened Thacker, Thacker met with police officers. He was "still upset" and "still . . . shaking" when he met with the police. He told an officer that he thought A.S. was capable of killing him. After he talked to the police, he "calmed down"

On cross-examination, Thacker testified that he was "not afraid of [A.S.] as a person." On re-direct examination, Thacker clarified that he was afraid of A.S. when A.S. was angry. He explained that he feared for his safety on occasions when A.S. lost his temper. When the court asked Thacker if he was afraid of A.S., Thacker responded: "I was scared at the time. But what I'm saying is I wasn't scared of [A.S.] as a person as a person [*sic*], but I was scared at the time."

A.S.'s girlfriend, S. L., testified for A.S. She testified regarding an occasion when Thacker punched A.S. in downtown San Jose. She explained that Thacker parked his car near where she and A.S. were standing, yelled at A.S., punched A.S. in the face while

3

remaining in the car, and drove away.  She could not recall when the incident occurred.

When questioned about the incident, Thacker denied punching A.S.

DISCUSSION

**I.** *Sufficiency of the Evidence*

  **A.** *Standard of Review*

An appellate court's review of the sufficiency of the evidence in a juvenile delinquency proceeding "is governed by the same principles applicable to adult criminal appeals." (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.)  Under those principles, the appellate court must " 'determine whether the record contains any substantial evidence tending to support the finding of the trier of fact, and in considering this question [the appellate court] must view this evidence in the light most favorable to the finding.' " (*Ibid.*)  "Substantial evidence is evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the appellant guilty beyond a reasonable doubt." (*Ibid.*)  "The test is not whether guilt is established beyond a reasonable doubt, but whether any 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*Ibid.*)  "The trier of fact, not the appellate court, must be convinced of the minor's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment." (*In re James B.* (2003) 109 Cal.App.4th 862, 872.)

  **B.** *Section 422 and the Elements A.S. Challenges*

Section 422 prohibits criminal threats.  **"**In order to prove a violation of section 422, the prosecution must establish all of the following:  (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the

4

statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

A.S. contends that we must reverse the true finding on the criminal threats count because there was insufficient evidence to support the third and fourth elements of the offense. As explained below, we conclude that there was substantial evidence supporting those elements.

**C.** *There was Sufficient Evidence Supporting the Third Element*

In regard to the third element, A.S. contends that there was no evidence that Thacker perceived A.S.'s statements "as a real and genuine threat" subject to "immediate prospect of execution." A.S. emphasizes that Thacker "knew [the] statements were mere puffery." We are not persuaded by A.S.'s argument.

The third element of section 422 requires the threat, "on its face and under the circumstances in which it is made," to be "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened[] a gravity of purpose and an immediate prospect of execution of the threat." (§ 422, subd. (a).) " 'The use of the word "so" indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.' " (*People v. Bolin* (1998) 18 Cal.4th 297, 340.) "Thus, the third element's four enumerated statutory elements—unequivocality, unconditionality, immediacy and

5

specificity—are 'simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 807 (*Wilson*).) "While the third element of section 422 . . . requires the threat to convey ' "a gravity of purpose and an immediate prospect of execution of the threat,' " it 'does not require an immediate ability to carry out the threat.' " (*Ibid.*) "The appraisal of the immediacy of a threat under section 422 quite appropriately includes assessment of the sense of urgency and foreboding caused to the person being threatened." (*Id.* at p. 817, fn 3.)

Here, A.S.'s statements were certainly unequivocal, unconditional, and specific: he threatened to "shoot [Thacker's] fucking ass with [his] Glock" and to "kill [Thacker's] fucking ass." To emphasize his point, A.S. formed his hand into the shape of a gun, placed it in Thacker's face, and said, "pow, pow, pow." A.S. was upset when he made the statements, and he made the statements in a loud voice. The statements, combined with the circumstances under which they were made, conveyed to Thacker an immediate prospect of execution of the threat. Thacker testified that he believed A.S. could actually shoot him with a gun. After A.S. threatened him, Thacker called 911, and he told a police officer that he thought A.S. was capable of killing him. The foregoing evidence constituted substantial evidence that A.S.'s statements conveyed a true threat subject to immediate prospect of execution. We therefore must conclude that there was sufficient evidence supporting the third element.

Contrary to A.S.'s assertion, the evidence did not establish that Thacker perceived the statements as mere puffery. Thacker never testified that he believed A.S. was joking or making exaggerated statements. Rather, Thacker testified that he believed A.S. could actually shoot him, and he immediately called 911 when A.S. threatened him. Although the evidence did not show that A.S. was armed with a gun when he threatened Thacker, such evidence was not required. Section 422 requires only evidence of an immediate

6

prospect of execution of the threat, not evidence of an immediate ability to carry out the threat. (*Wilson, supra,* 186 Cal.App.4th at p. 807.) Thus, we are not persuaded by A.S.'s contention that Thacker believed the statements to be mere puffery.

### D. *There was Sufficient Evidence Supporting the Fourth Element*

A.S. contends that there was insufficient evidence to support the fourth element because Thacker's testimony failed to show that Thacker was in sustained fear after the threatening comments. A.S. emphasizes that Thacker's "fear subsided in minutes." Again, we are not persuaded by A.S.'s argument.

The fourth element of section 422 "requires proof of a mental element in the victim." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*).) The evidence must show that the victim was "in sustained fear for his or her own safety or for his or her immediate family's safety." (§ 422, subd. (a).) Fear is sustained when it lasts for "a period of time that extends beyond what is momentary, fleeting, or transitory." (*Allen, supra,* 33 Cal.App.4th at p. 1156.) Fear lasting 15 minutes has been held to be sustained fear. (*People v. Fiero* (2010) 180 Cal.App.4th 1342, 1349; *Allen, supra,* 33 Cal.App.4th at p. 1156.)

Here, Thacker testified that he was "in fear," "scared," "upset," and "shaking" immediately after A.S. threatened him. He explained that he believed A.S. could actually shoot him with a gun. The evidence demonstrated that Thacker's fear continued after he left the scene—Thacker testified that he was "nervous" and "looking over [his] shoulder" as he walked home. Indeed, the evidence showed that Thacker was in fear hours after A.S. threatened him. Thacker testified that when he met with police approximately four hours after the incident, he was "still upset," "still shaking," and told an officer that he thought A.S. was capable of killing him. The foregoing evidence constituted substantial evidence that Thacker was in sustained fear. We therefore must conclude that there was sufficient evidence supporting the fourth element.

7

In arguing that Thacker was not in sustained fear, A.S. points out that Thacker was "not afraid of [A.S.] generally." It is true that Thacker testified that he was "not afraid of [A.S.] as a person." However, Thacker clarified that he was afraid of A.S. when A.S. was angry. He also testified that he feared for his safety on occasions when A.S. lost his temper. Thus, because the evidence showed that A.S. was angry when he threatened Thacker, Thacker's testimony that he was not afraid of A.S. as a person does not require us to conclude that Thacker was not in sustained fear.

### E. *Conclusion*

In summary, we conclude that the true finding on the criminal threats count was supported by substantial evidence. We accordingly must affirm the true finding on that count.

## II. *The No-Contact Probation Conditions*

### A. *Background*

As conditions of probation, the juvenile court ordered A.S. to "have no contact of any type with Hoang D.," "have no contact of any type with Irene Z.," and "have no contact of any type with Paul T."

When the court stated its intention to impose a condition prohibiting contact with Paul T., the court explained the meaning of the term "no contact" to A.S.: "When I say no contact with the victim, I'm going to make that clear to you, [A.S.] A lot of people think as long as I don't talk to him directly, that's not contact. It means more than that. So, for example, don't text him. Don't have your friends text him. Don't Facebook him. If you see him on the street, you don't flip him off. You don't mad dog him. [¶] . . . When you see him, you avoid him. When you see trouble, you walk away from it. That's really the common sensical [*sic*] thing you need to do."

8

**B.** *A.S.'s Argument*

A.S. contends that the no-contact conditions are unconstitutionally vague and overbroad "because they contain no knowledge requirement nor do they specify any particular distance." He emphasizes that he "could inadvertently enter a store or other public place where Hoang D., Irene Z., or Paul T. [is] present and thereby unknowingly violate his probation." He further emphasizes that "throughout the duration of his probation, he will not know where Hoang D., Irene Z., or Paul T. live, work, travel, and recreate." He therefore requests that we modify the no-contact conditions to "include a knowledge requirement," "specify a particular distance restriction," and "name a few places where [he] should avoid, or traverse with care." As explained below, we conclude that the no-contact conditions are neither vague nor overbroad.

**C.** *The No-Contact Conditions are Not Vague or Overbroad*

"[P]robation conditions may be challenged on the grounds of unconstitutional vagueness and overbreadth." (*People v. Freitas* (2009) 179 Cal.App.4th 747, 750.) We review such constitutional challenges de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad. [Citation.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) "California appellate courts have found probation conditions to be unconstitutionally vague or overbroad when they do not require the probationer to have knowledge of the prohibited conduct or circumstances." (*People v. Kim* (2011) 193 Cal.App.4th 836, 843.)

9

Probation conditions are interpreted with "common sense." (*In re Ramon M.* (2009) 178 Cal.App.4th 665, 677.) "A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' " (*People v. Olguin* (2008) 45 Cal.4th 375, 383.) A probation condition that otherwise would be deemed vague or overbroad "may be constitutional because the juvenile court offered additional oral or written comments clarifying" the condition. (*Sheena K., supra,* 40 Cal.4th at p. 891; see also *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1241 [considering the juvenile court's comments in holding that a probation condition was not overbroad].)

Here, A.S. asserts that the no-contact conditions are vague and overbroad because he could arrive at a public location where Hoang D., Irene Z., and Paul T. are present, be unaware of their presence, and unknowingly violate the no-contact conditions. This argument is unconvincing. The no-contact conditions specify that A.S. is to "have no contact" with Hoang D., Irene Z., and Paul T. A reasonable, objective reader would construe the term "contact" as requiring awareness of the presence of the contacted person. Indeed, it belies common sense to conclude that A.S could be in contact with Hoang D., Irene Z., or Paul T. without even realizing it. Thus, inherent in each of the no-contact conditions is the requirement that A.S. be aware of the presence of Hoang D., Irene Z., or Paul T. and the requirement that A.S. knowingly contact those individuals. Any potential confusion was clarified by the juvenile court's comments. The court provided many examples of ways in which A.S. could violate the no-contact conditions, all of which required A.S. to be aware of the contact. The court also advised A.S. on compliance with the no-contact conditions if he arrives at a place and, unbeknownst to him, Hoang D., Irene Z., or Paul T. is present: "When you see him, you avoid him. When you see trouble, you walk away from it." The court's comments made clear that A.S. could not unknowingly violate the no-contact conditions. Accordingly, for the

foregoing reasons, we must conclude that the no-contact conditions are not vague or overbroad.  Modification of the no-contact conditions therefore is unnecessary.

**DISPOSITION**

The judgment is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
MÁRQUEZ, J.

11

| | |
|---|---|
| Trial Court: | Santa Clara County<br>Superior Court No.: JV39630 |
| Trial Judge: | The Honorable Jesus Valencia, Jr. |
| Attorney for Defendant and Appellant A.S.: | Eric John Nelson<br>under appointment by the Court<br>of Appeal for Appellant |
| Attorneys for Plaintiff and Respondent The People: | Kamala D. Harris<br>Attorney General<br><br>Dane R. Gillette,<br>Chief Assistant Attorney General<br><br>Gerald A. Engler,<br>Senior Assistant Attorney General<br><br>Ronald A. Niver,<br>Deputy Attorney General<br><br>Sharon G. Birenbaum,<br>Deputy Attorney General<br><br>Elizabeth Hereford,<br>Deputy Attorney General |

*People v. A.S.*
**H039825**