Filed 5/16/16  In re Roman C. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ROMAN C., <br><br> a Person Coming Under the Juvenile Court Law. | B260842 <br><br> (Los Angeles County <br> Super. Ct. No. YJ37879) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROMAN C., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Irma J. Brown, Judge.  Affirmed as modified.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

## INTRODUCTION

Roman C. appeals from the juvenile court's order declaring him a ward of the court after finding that he had committed a robbery. (Pen. Code, § 211.) The court ordered him home on probation subject to certain terms and conditions. Roman claims (1) the evidence is insufficient to support the court's finding, (2) one of his probation conditions is unreasonable and three others are unconstitutionally overbroad, and (3) the court erred in imposing a maximum period of confinement. We affirm the disposition order as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

The People filed a Welfare and Institutions Code section 602[1] petition alleging Roman, then 16 years old, committed one count of second degree robbery against Alejandro A. Roman (through counsel) denied the allegation.

On April 2, 2014, as 17-year-old Alejandro was walking home from school in Los Angeles, three African-American males about his age walked toward him from the opposite direction. One was wearing a red shirt, "military style" "camo cargo shorts," and a black beanie; another was wearing a gray "hoodie" and khaki pants; and a third may have been wearing black pants. The three men came close enough to him that he could see them without his glasses. When Alejandro passed them, they approached him from behind, punched him in the face, knocked him to the ground, stomped on his head, and kicked him. One of them then took his iPod from his pocket and ran.

Alejandro walked to a stranger's house nearby and asked the occupant to call the police. Police officers arrived about 10 to 15 minutes later, and Alejandro reported what had happened. Within five to 10 minutes of his arrival, Deputy Carlos Herrera of the Los Angeles Sheriff's Department initiated a crime broadcast providing Alejandro's descriptions of the three suspects over his police radio. Within minutes of the broadcast,

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

two suspects matching the descriptions were detained one block from where the robbery had occurred.

Deputy Herrera drove Alejandro to the location for a "field show-up" to see if he recognized the detained suspects. Before being able to make an identification, Alejandro had to be given his glasses and moved closer to the suspects. He then identified Roman, who was wearing a red T-shirt and "military style" camouflage shorts, as the one who had punched him and taken his iPod. He identified the second suspect, who was wearing a gray hooded sweatshirt and khaki pants, as the one who had held him down during the robbery and punched him. Alejandro did not express any doubt about either identification.

On September 23, 2014, the jurisdiction hearing commenced. After hearing the testimony of Alejandro, Deputy Herrera, and Roman,[2] the court determined that the evidence established beyond a reasonable doubt that Roman had committed the crime of second degree robbery in violation of Penal Code section 211 and sustained the petition. The juvenile court declared Roman a ward of the court and placed him home on probation under specified conditions. Roman timely appeals.

## DISCUSSION

### A. THE CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE

Roman argues that there was insufficient evidence that he committed the robbery. Our review of a substantial evidence claim in a juvenile proceeding applies the same standard used in an adult criminal case. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) Viewing the record in the light most favorable to the judgment, we consider whether any reasonable fact finder could have concluded that the juvenile committed the crime beyond a reasonable doubt. (*Ibid.*) We do not reweigh the evidence or reevaluate the credibility of witnesses (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639); and we

---

[2] Testifying in his own defense, Roman said he had never seen Alejandro before and denied his involvement in the incident although he acknowledged the second suspect was his friend.

presume the existence of every fact the trier of fact reasonably could deduce from the evidence.  (*In re V.V.*, *supra*, at p. 1026.)

        1.     *The Challenge to the Identification Evidence*

Roman first challenges the juvenile court's finding that he was the person who had committed the crime.  To overturn this finding, "'the evidence of identity must be so weak as to constitute practically no evidence at all.'  [Citations.]"  (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521.)  Roman argues that the evidence was insubstantial given the "'vagaries of eyewitness identification,'" the stress of the attack, and Alejandro's poor eyesight and inconsistent testimony.  This argument, however, ignores the substantial evidence supporting the juvenile court's finding.

Alejandro gave the police specific descriptions of the clothing worn by two young African-American males who had attacked and robbed him: one wore a red shirt and camouflage cargo shorts; and another wore a grey hoodie and khaki pants.  Shortly after the incident, following the police broadcast of these descriptions, Roman and his friend were stopped just a block away, wearing clothing matching the descriptions.  Alejandro then identified Roman and his friend at the field show-up, stating that Roman had punched him and taken his iPod.  This evidence amply supports the finding that Roman robbed Alejandro.  (*People v. Mohamed*, *supra*, 201 Cal.App.4th at p. 522 ["'[T]he identity of a defendant may be established by proof of any peculiarities of size, appearance, similarity of voice, features or clothing'"].)

At the jurisdiction hearing, Alejandro testified that his recollection of the five-month-old incident was "blurry," that his memory had faded, and that he did not want to testify.  While there were inconsistencies in Alejandro's testimony (e.g., the number of males involved), Roman's counsel explored them at length on cross-examination and emphasized them in closing argument.  The juvenile court, as the fact finder, was free to accept or reject Roman's argument about the weakness of Alejandro's testimony.  (*People v. Mohamed*, *supra*, 201 Cal.App.4th at p. 522 ["'The strength or weakness of the identification, the . . . discrepancies in the testimony, . . . [and] the uncertainty of recollection . . . are matters which go to the weight of the evidence and the credibility of

4

the witnesses'"].)  The court reasonably could conclude that Alejandro's prior identification was reliable:  Alejandro testified that his recollection was best on the day of the robbery; and his prior identification was strongly supported by his accurate description of two of the robbers found near the crime scene minutes after the attack. The court also had the opportunity to consider Roman's testimony and expressed "some reservation about the veracity of it."

On these facts, we cannot conclude, as Roman argues, that Alejandro's identification of Roman was inherently improbable.  (*In re Gustavo M*. (1989) 214 Cal.App.3d 1485, 1497 ["[W]hen the circumstances surrounding the identification and its weight are explored at length at trial, where eyewitness identification is believed by the trier of fact, that determination is binding on the reviewing court"].)

2.      *The Challenge to the Timing of the Offense*

Roman next contends that he could not have committed the offense in the time frame established by the evidence.  Specifically, he claims that there was a conflict in the evidence between his testimony that the police had stopped him at around 3:30 p.m. and the testimony of Alejandro and Deputy Herrera that they were in the area of the robbery at about 4:00 p.m.[3]  Roman is correct that there is a discrepancy, but it is not one that points to innocence.

The sequence of events is consistent with the juvenile court's finding of guilt.  The record clearly established the following chronology:  Alejandro was robbed; the 911 call was placed; Alejandro gave Deputy Herrera descriptions of the teenagers involved; the descriptions were broadcast over the police radio; Roman and his friend were stopped a block away; and Alejandro identified Roman as one of the robbers.  Roman overlooks this chronology and instead focuses on the obvious inaccuracy in the prosecutor's

---

[3]      The testimony of these two witnesses came in response to the prosecutor's leading questions about the timeframe.  The prosecutor's first question to Alejandro was whether he was in the area where the crime occurred "at around 3:57" p.m.  The prosecutor asked Deputy Herrera whether he was assigned to patrol on the day of the crime "at approximately four o'clock in the afternoon."

5

questioning of Alejandro and Deputy Herrera that suggested the crime occurred at approximately 4:00 p.m. (when the robbery actually occurred, according to the stipulated time of the 911 call, shortly before 3:29 p.m.). While this discrepancy calls into question the precision of Alejandro's and Deputy Herrera's testimony, it does not cast doubt on whether Roman could have committed the robbery in light of the chronology. The juvenile court thus reasonably concluded that the inconsistency in the testimony was not "major."

**B.    THE CHALLENGE TO THE PROBATIONARY TERMS**

A juvenile court has broad authority to impose reasonable probation conditions. (§ 730, subd. (b) [authorizing conditions to further the ends of justice, reformation, and rehabilitation].) When challenged, juvenile probation conditions are judged by the three-part conjunctive test set forth in *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*). (*In re D.G.* (2010) 187 Cal.App.4th 47, 52-53 [same test applies to juvenile and adult probation conditions].) Under *Lent*, a condition of probation will be upheld unless it "'(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*Lent*, *supra*, at p. 486, fn. omitted.) A probation condition also may be challenged for constitutional infirmity. (*In re Sheena K.* (2007) 40 Cal.4th 875, 889-891 (*Sheena K.*).) A juvenile court's imposition of a probation condition is generally reviewed for an abuse of discretion, except a constitutional challenge to a condition is reviewed de novo. (*In re Malik J.* (2015) 240 Cal.App.4th 896, 901.) We apply these standards to the challenges that Roman makes to four probationary terms.

1.    *The Search Condition*

Probation condition number 21 provides: "You must permit a law enforcement officer to search your person, house or property at any time of the day or night with or without a warrant." Roman contends that this condition is unreasonable under the *Lent* test because it bears no relationship to the crime of robbery, it relates to conduct which is

not itself criminal, and it has no rational relationship to his rehabilitation or to his potential for future criminality.

Roman has forfeited this claim by failing to object to it in juvenile court. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 889 [failure to object to probation condition results in forfeiture unless the objection raises a pure question of law]; *In re Justin S.* (2001) 93 Cal.App.4th 811, 814 [forfeiture results absent an applicable exception].) Roman concedes that our review of the search condition is subject to the forfeiture rule because it requires consideration of the individual facts in the record, but asks that we exercise our discretion to review the merits because the condition implicates his Fourth Amendment rights. While we do have discretion, we decline to exercise it because this is not one of those rare cases warranting relief from the forfeiture rule. (*Sheena K.*, *supra*, at p. 887, fn. 7 [discretion should be exercised rarely in cases presenting an important legal issue]; *People v. Ramos* (2004) 34 Cal.4th 494, 505 [forfeiture rule applies to search condition].)

Roman's argument also fails on its merits. As he acknowledges, search conditions have been upheld in numerous juvenile cases. (See, e.g., *In re Abdirahman S.* (1997) 58 Cal.App.4th 963, 968-969 [aiding assault with a deadly weapon]; *In re Binh L.* (1992) 5 Cal.App.4th 194, 204 [auto theft]; *In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1502-1503 [disturbing the peace by minors who admitted alcohol and drug use].) The search condition in this case satisfies the *Lent* test because it is reasonably related to supervising Roman so as to discourage him from engaging in similar larcenous behavior and to protect the public against his future criminality. (See *In re Jaime P.* (2006) 40 Cal.4th 128, 134 ["The very existence of a probation search condition, whether for adults or juveniles, should deter further criminal acts"]; *People v. Balestra* (1999) 76 Cal.App.4th 57, 67 ["[A] warrantless search condition is intended to ensure that the subject thereof is obeying the fundamental condition of all grants of probation, that is, the usual requirement . . . that a probationer 'obey all laws'"].) As the court stated in *In re Binh L.*, "[a] probation search condition [in a case involving larceny] was rational both to assure that the minor would correct his behavior and in this sense be rehabilitated, and to protect the public against the possibility he would not." (*In re Binh L.*, *supra*, at p. 204.)

Given the crime committed in this case, the juvenile court reasonably could have concluded that Roman was in need of the type of deterrence provided by a search condition and that society was deserving of the protection afforded by it. Roman participated in a coordinated, vicious, and brazen assault on a vulnerable stranger to steal his property (i.e., an iPod). A search condition might discourage Roman from future theft if he knows the police might discover any stolen item. Thus, we find no abuse of discretion in the trial court's imposition of the search condition in this case. (§ 730, subd. (b); *Sheena K.*, *supra*, 40 Cal.4th at p. 889 [juvenile court has "wide discretion" to select any reasonable probation condition suited to the minor's reformation and rehabilitation and so that justice may be done].)

2.     *The Activities Condition*[4]

Probation condition number 10 states: "You must attend and participate in tutoring, vocational training, recreational activities or any other activities as directed by your caregiver or Probation Officer." Roman argues that this condition imposes a constitutionally overbroad restriction on the minor's right of association because it sets no limits on the activities in which he or she might be required to participate.[5] We disagree.

A parent's constitutionally protected liberty interest includes the right to direct the upbringing and education of children. (*In re Byron B.* (2004) 119 Cal.App.4th 1013,

---

[4]     Roman did not object to any probation condition in the juvenile court. For his remaining three challenges to the probation conditions (i.e., the activities, the non-association, and the travel restriction conditions), however, he invokes the "facial challenge" exception to the forfeiture rule. Under that exception, a party does not forfeit a challenge to a condition that is unconstitutionally overbroad on its face. (*Sheena K.*, *supra*, 40 Cal.4th at p. 885.) Because we construe the remaining challenges to raise purely legal questions, we do not find that they have been forfeited.

[5]     We note that Roman does not argue that the words "or any other activities" create constitutional infirmity; his argument is that the condition "gives the probation officer unfettered discretion to require the minor to participate in any and all educational, vocational, or recreational activities he directs."

1016-1017.) When the state asserts jurisdiction over a minor, the state "'stands in the shoes of the parents.'" (*In re Victor L.* (2010) 182 Cal.App.4th 902, 909.) The challenged condition in this case, which involves the upbringing and education of the minor, furthers the rehabilitative purpose of probation. The challenged condition allows for structure and supervision over the minor's free time and is reasonably tailored to promote the state's compelling interest in his or her rehabilitation. (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) The juvenile court was not required to specify each permitted and prohibited activity, but instead could assign this responsibility to the minor's caregiver and probation officer. (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1243 ["The juvenile court could not reasonably be expected to define with precision all classes of persons which might influence Frank to commit further bad acts. It may instead rely on the discretion of his parents, and the probation department acting as parent, to promote and nurture his rehabilitation."].)[6]

3.    *The Non-association Condition*

Probation condition number 13 specifies: "You must not associate or communicate with anyone you know your parent, caregiver or probation officer does not approve. . . ." Roman does not appear to dispute that a non-association condition would be appropriate in this case given his conduct of associating with others to beat and rob Alejandro. Instead, he contends that the condition imposed is overbroad and thus interferes with his constitutional right of association. His contention lacks merit.

A probation condition is vague when it fails to give fair notice of the prohibited conduct and overbroad when it unduly restricts a constitutional liberty. (*In re Byron B.*,

---

[6]    In challenging this condition, Roman cites three cases that are distinguishable because they involved adult, not juvenile, probationers. (*People v. Harrisson* (2005) 134 Cal.App.4th 637, 641-642; *People v. Garcia* (1993) 19 Cal.App.4th 97, 102; *People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058.) Since juveniles require more guidance and supervision, their probation conditions may be broader. (*In re R.V.* (2009) 171 Cal.App.4th 239, 247; see *Sheena K.*, *supra*, 40 Cal.4th at p. 889 [a condition that would be unconstitutional for an adult may be permissible for a minor].)

*supra*, 119 Cal.App.4th at pp. 1016, 1018.) The non-association condition challenged here suffers from neither constitutional infirmity. Fairly read, the condition means that Roman may not associate with an individual when specifically told not to do so by his probation officer or caregiver. (See *People v. Bravo* (1987) 43 Cal.3d 600, 606 [probation conditions should be given "meaning that would appear to a reasonable, objective reader"].) The condition's knowledge requirement—precluding contact with anyone Roman knows to be off limits—avoids vagueness and overbreadth concerns. Because Roman must know of the prohibited contacts if he is to violate the condition, he cannot complain that it is too vague (*Sheena K.*, *supra*, 40 Cal.4th at pp. 890, 892 [knowledge requirement addresses vagueness issue]) or that it is too broad (*In re Byron B.*, *supra*, at p. 1017 ["advance disapproval" requirement addresses overbreadth issue]).

The probation condition in this case is thus unlike the one condemned in *In re Kacy S.* (1998) 68 Cal.App.4th 704. The condition there stated that the minor "'[may] not associate with any persons not approved by his probation officer.'" (*Id.* at p. 712.) The court construed the condition to require advance approval of "literally" every contact, including the minor's contacts with such persons "as grocery clerks, mailcarriers and health care providers." (*Id.* at p. 713.) Read that broadly, the condition was breathtaking in scope, as it micromanaged every potential encounter the minor might have on a daily basis. (But see *In re Ramon M.* (2009) 178 Cal.App.4th 665, 676, 677 [rejecting challenge to similar condition because "[n]o reasonable person would read this provision to mean that [the minor] is required to seek prior approval to encounter people he does not yet know, or encountered only in incidental or formal situations"].)

In contrast, the condition in this case cannot reasonably be interpreted to require pre-approval of all potential contacts, but rather provides the probation officer and caregiver with disapproval authority that must be made known to Roman in advance. Indeed, Roman reads the condition this way, noting on appeal that the provision forbids his association "with anyone of whom he know[s] the probation officer, a caregiver or a parent disapproves." Courts have found similar provisions to be constitutional. (*In re Byron B.*, *supra*, 119 Cal.App.4th at pp. 1015, 1018 [upholding condition that the minor

10

may not have contact "'with anyone *known to be* disapproved by'" his parent or probation officer]; *In re Frank V.*, *supra*, 233 Cal.App.3d at pp. 1237, 1241-1242 [upholding condition that minor may "not associate with anyone disapproved of by his probation officer"].) Thus, the non-association condition here is lawful.[7]

    4.    *The Travel Restriction Condition*

Probation condition number 5 states: "You must not leave Los Angeles County unless you first get permission from your Probation Officer, Parent or Caregiver." Roman argues that this condition is overbroad. We do not reach the merits of this argument because the juvenile court did not impose this condition.

Although the preprinted box beside this condition is marked on the October 24, 2014 minute order, it does not correspond to the juvenile court's oral pronouncement of the terms and conditions of Roman's probation. The juvenile court expressly advised Roman of the probation conditions and read the text of each one (including condition numbers 1-4, 6, 8-10, 12-15, 15A, 21, 23, 23A, 30 and 38). The court did not mention the travel restriction condition. "When there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls. [Citation.]" (*People v. Morales* (2014) 224 Cal.App.4th 1587, 1594.) Accordingly, we correct this clerical error, deleting condition numbers 5 and 11,[8] to reflect the juvenile

---

[7]    In *In re Byron B.*, the court distinguished the challenged provisions in *In re Kacy S.* and *In re Frank V.* as follows: "The crucial difference . . . is that the valid probation condition [in *Frank V.*] referred to persons 'disapproved'; the invalid one [in *Kacy S.*] referred to persons 'not approved.' . . . Requiring advance approval is impractical. A parent or probation officer can hardly be expected to specify all of the innocuous people with whom the minor may come into contact. Requiring advance disapproval makes the probation condition workable and saves it from overbreadth." (*In re Byron B.*, *supra*, 119 Cal.App.4th at p. 1017.) In other words, the critical distinction is between advance approval of all contacts (invalid) and advance disapproval of specified contacts (valid). The condition in this case falls in the latter category.

[8]    A similar discrepancy exists with condition number 11 ("You must not be on the grounds of a school unless enrolled, attending classes, participating in school programs or

11

court's oral pronouncement. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187 [appellate court may correct clerical errors on its own motion or upon application of the parties].)

## C. THE CHALLENGE TO SETTING A MAXIMUM PERIOD OF CONFINEMENT

Because he was placed home on probation and not removed from his mother's physical custody, Roman contends—and the People agree—that the juvenile court erred in setting a maximum term of confinement of five years. Roman is correct. (See § 726, subd. (d);[9] *In re Matthew A.* (2008) 165 Cal.App.4th 537, 541 [court is required to specify maximum period of physical confinement only when minor is removed from the physical custody of his or her parent or guardian].) Accordingly, we strike the term from the court's minute order. (See *In re A.C.* (2014) 224 Cal.App.4th 590, 592 [stating that "where a juvenile court's order includes a maximum confinement term for a minor who is not removed from parental custody, the remedy is to strike the term"].)

---

with parent/caretaker."). Though the clerk checked this box in the minute order, the court did not impose this condition (according to the reporter's transcript).

[9] "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (§ 726, subd. (d)(1).)

## **DISPOSITION**

The minute order of October 24, 2014 is modified to strike the maximum confinement term of five years and to delete probation condition numbers 5 and 11.  In all other respects, the order is affirmed.


BLUMENFELD, J.[*]


We concur:


PERLUSS, P. J.


SEGAL, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13